STATE of South Dakota, DEPART-
MENT OF SOCIAL SERVICES,
et al., Appellants,

v.

Erling S. RODVIK, d/b/a Valley Springs
Manor Nursing Home, Respondent.

No. 12176.

Supreme Court of South Dakota.

Argued Jan. 10, 1978.

Decided April 6, 1978.

Janice C. Godtland, Asst. Atty. Gen., William J. Janklow, Atty. Gen., Pierre, on the brief, for appellants.

Peter J. Buttaro, Aberdeen, for respondent.

DUNN, Chief Justice.

This is an appeal from the judgment of the Circuit Court, Second Judicial Circuit, which reversed a decision of a hearing examiner for the Department of Social Services. The Department had denied the respondent's nursing home a contract to continue to participate in the Medicaid program. The hearing examiner upheld the Department's action, but the trial court reversed. The Department appeals to this court. We reverse the circuit court's judgment.

In order to deal with the issues presented, it is necessary to describe the Medicaid program as it is administered in South Dakota. In 1974, South Dakota elected to participate in the Medicaid program, which is Title XIX of the Social Security Act, 42 U.S.C.A. § 1396, et seq. The program is designed to provide medical services to indigents of all ages, and extensive federal requirements for participation in the program have been promulgated.

Under this program the Department of Health is the "survey agency" and the Department of Social Services is the "single state agency." Participating facilities are categorized according to the level of care provided to the patients. Some are called "skilled nursing facilities" and others "intermediate care facilities." The facility at issue in this case is one of the latter.

A nursing home can choose whether or not to participate in the Medicaid program. When a nursing home chooses to participate, the Department of Health conducts a survey of the home. After the survey has been completed, the Department of Health sends a "Statement of Deficiencies" to the home, listing the deficiencies found as a result of the survey. The nursing home must then fill out a "Plan of Corrections," which briefly explains the steps it will take to rectify the deficiencies and gives a proposed date for completion of the corrections. This statement is returned to the Department of Health, which then evaluates the plan and makes recommendations to the Department of Social Services concerning the facility's participation in the

Medicaid program. These recommendations are binding on the Department of Social Services. The contract which a nursing home signs when it participates in the Medicaid program has a maximum length of one year, necessitating a constant process of evaluation.

In 1974, Valley Springs Manor Nursing Home elected to participate in the federal program. A survey was done in that year by the Department of Health, and forty-four deficiencies were found. The home was certified for only a six-month contract, which was then extended one more month.

In April 1975, a survey team visited the nursing home to conduct another survey to determine whether the home met federal standards. It spent an entire day conducting the survey, and at the end of the day, one member of the team explained to the administrator, Mr. Rodvik, what had been found and what must be done. On June 17, 1975, the Department of Health sent Mr. Rodvik a "Statement of Deficiencies" listing forty-two deficiencies and asked that he return his Plan of Corrections by July 7, 1975. The plan was received on July 7th, together with a letter from Mr. Rodvik saying that his mother-in-law was ill and that a more complete plan would follow, as would a request for waiver of some of the deficient items. The plan submitted on July 7th was only partially completed, some of the areas were left completely blank and several of them were without any time table for correction of deficiencies. On July 14th, a detailed letter was sent to Mr. Rodvik spelling out what he needed to do to maintain his contract. On July 30th, having received no further plans or requests for waivers, the Department of Health notified the administrator that his contract would not be renewed for the following reasons: (1) nonconformity with federal regulations concerning compliance with federal, state and local laws, drugs and biologicals, and environment and sanitation, (2) repeat deficiencies from the previous survey, and (3) failure to submit an adequate Plan of Corrections. On August 6th, the Department of Health received a letter

**900**

from Mr. Rodvik detailing some of the corrections, but the contract had expired on July 31, 1975, and the Department of Health determined that a new one would not be granted.

The hearing examiner, in upholding the action of the Department of Social Services, first stated that the issue was whether the home was correctly "denied certification," not whether it was correctly "decertified." The administrator has consistently argued that this was a decertification, yet the hearing examiner pointed out that the time of the contract had expired, so the issue was whether it should have been renewed.

The examiner found that Mr. Rodvik's Plan of Corrections was incomplete and that he had indicated to the Department of Health that he would send a completed one and apply for waiver of some deficiencies at a later date. A complete plan was never filed, and the waivers were never requested, but the examiner found that many of the deficiencies had been corrected by the time of the hearing. Repeat deficiencies were found to exist from 1974, and the examiner determined that the nursing home was not a safe place for the care and treatment of intermediate care patients. This determination was based on the lack of a fire alarm or smoke detector in the home. Mr. Rodvik admitted no such detection system existed but argued that the close proximity of the fire station to the home would make up for the lack of such a system. The only way for a fire to have been detected in the home would have been for one of the staff to have observed it.

From these facts, the examiner concluded that the uncorrected deficiencies and the repeat items from 1974, together with violations of the Life Safety Code requirements, supported the agency's action. He pointed out that federal regulations prohibit a facility from participating in the program if it has repeat deficiencies from a prior survey, thus the agency had no choice in this matter. The Health, Education and Welfare Office in Denver had confirmed the nonrenewal of the contract after reviewing the file of the Department of Health.

The trial court treated the matter as a "decertification" and applied SDCL 1–26–36 as its standard of review. It found the decertification to be an abuse of discretion and ruled that the hearing examiner's conclusions as to repeat deficiencies were unsupported by the record because there was lack of notice and denial of reasonable time within which to comply and a denial of adequate trained assistance in filling out the Plan of Corrections, and because the Statement of Deficiencies was in some cases ambiguous, unclear and arbitrary. The court ruled the "decertification" invalid, gave the nursing home forty-five days to prepare a Plan of Corrections, and awarded the nursing home $22,728.76, plus 8% interest "exclusive of any damages that may be forthcoming because of the arbitrary and capricious acts of the [Department of Social Services]."

■ The first question raised by this appeal deals with the proper statute on which to base an appeal from an administrative decision such as this one. The Department of Social Services urges the application of the narrower scope of review found at SDCL 28–1–22, while the nursing home contends that the proper statute is SDCL 1–26–36, South Dakota's Administrative Procedures Act. The circuit court relied on SDCL 1–26–36(5) and (6) in making its decision. Our reading of SDCL 28–1–20 through 28–1–23 convinces us that SDCL 28–1–22 is intended to apply to persons whose claims for welfare assistance have been rejected by the Division of Social Welfare, and that the proper statute on which to base a review of the agency's denial of a provider contract is SDCL 1–26–36. The definition of "agency" found at SDCL 1–26–1 and the action of the South Dakota legislature in 1972 in repealing SDCL 21–33, which provided an alternative method of appeal from administrative agencies' decisions, lend support to this conclusion. For the reasons given below, however, we also conclude that the circuit court exceeded the scope of review specified in SDCL 1–26–36.

■ As to the trial court's determination that the hearing officer's determination

was unsupported by evidence in the record, this court has stated that the standard to be applied is not whether there is substantial evidence contrary to the agency's findings, but, rather, whether there is substantial evidence to support the agency's findings. *Application of Ed Phillips & Sons Co.,* 1972, 86 S.D. 326, 195 N.W.2d 400. The trial court concluded that the hearing examiner's conclusions of law XX, XXI and XXII were unsupported by substantial evidence because of a lack of notice to appellant and denial to him of reasonable time within which to comply, denial of adequate trained assistance, and because the statement of deficiencies was "in some cases ambiguous, unclear and arbitrary." The conclusions of law being challenged read as follows:

### XX

"That at least nine of the deficiency items in the 1975 Statement of Deficiencies prepared by the State Department of Health were deficiencies which appeared in the 1974 Statement of Deficiencies similarly prepared, and had not been corrected pursuant to the time table and dates of correction as shown by Appellant's 1974 Plan of Correction."

### XXI

"That 45 C.F.R. 249.33(4)(iv) provides that no facility may be certified by the survey agency where there are deficiencies repeated from a prior certification survey."

### XXII

"That the State Department of Health, as survey agency, utilizing it's (sic) professional judgment and special expertise, correctly determined that Appellant was not in compliance with the requirements of Federal and State law and regulation; that Appellant's Plan of Correction was inadequate, incomplete, and unacceptable; and correctly advised the Division of Social Welfare that Appellant was not eligible for a new Care Facility Vendor Agreement."

■ It is undisputed that all the statements of the hearing examiner were accurate; the trial court merely concluded that there was lack of notice and trained assist-

ance and that the Statement of Deficiencies was vague and arbitrary. As early as March 18, 1975, the nursing home had received a letter informing it of the visit of the survey team and advising that all repeat deficiencies should be corrected since the program required that there not be any repeat deficiencies. There is evidence that at the end of its survey in April of 1975, the survey team discussed its findings with the nursing home administrator and advised him of the repeat deficiencies. Throughout the months of June and July he was informed by the Department of Health that he was in danger of not being renewed unless a very good Plan of Corrections was submitted. In light of this, we conclude that there was sufficient evidence to support the hearing examiner's determination concerning repeat deficiencies and adequate notice was given to the administrator.

The hearing examiner's conclusion concerning the inadequacy of the administrator's Plan of Corrections is likewise supported by the evidence. The plan mailed on July 3, 1975, and received on July 7th was only partially filled out; some of the areas were left completely blank and several of them were without any time table for correction of deficiencies. Mr. Rodvik indicated that he would submit a more complete plan and apply for waivers of some of the deficiencies at a later date. He never requested any waivers and only submitted an updated plan several days after expiration of his contract and after several warnings from the Department of Health. It is important to point out that the nursing home administrator was not required to actually correct all deficiencies within the period from June 17, 1975, to July 7, 1975; all that was required was a short paragraph setting forth the administrator's plan to deal with the deficiency and an estimated date of correction. Our examination of the Statement of Deficiencies indicates that it was not so complex that its completion required the assistance of trained personnel, and it was not so vague that the reader could not understand the claimed deficiency. Mr. Rodvik had filled out a similar

form in 1974, and he was familiar with the program and its requirements. We conclude that the hearing examiner's findings were supported by substantial evidence in the record and that the trial court erred in reversing on that basis.

The other basis for reversal of the hearing examiner's decision was that "the decertification of the Appellant's nursing home was clearly an abuse of discretion by the Respondent." Throughout this process, the administrator has insisted that his nursing home was "decertified," while the Department of Social Services contends that his contract was not renewed. Counsel for the administrator relies on *Hathaway v. Mathews,* 1976, 7 Cir., 546 F.2d 227, in support of his argument that a property right in continuation of the contract existed and could not be taken away by "decertification" without notice and a hearing prior to the decertification. We are of the opinion that the hearing examiner was correct in treating this matter as a failure to renew a contract and not as a decertification. The contract had expired and simply was not renewed; it was not taken away from Mr. Rodvik while still in effect. The California Supreme Court in a case very similar to this one held that a mere unilateral hope of renewal of a provider contract was not a property right and no hearing was required prior to nonrenewal of a contract. *Paramount Convalescent Center, Inc. v. Department of Health Care Services,* 1975, 15 Cal.3d 489, 125 Cal.Rptr. 265, 542 P.2d 1. See also *Shady Acres Nursing Home, Inc. v. Canary,* 1973, 39 Ohio App.2d 47, 316 N.E.2d 481. Since we have concluded that the hearing examiner's decision was supported by substantial evidence on the record and that Mr. Rodvik had no property right in renewal of a contract, we also conclude that the trial court erred in holding that the hearing examiner abused his discretion.

Mr. Rodvik argues that he has been the victim of oppressive bureaucracy; that the reason for the deficiencies was that he planned to build a new nursing home; and that it would be a waste of time to renovate the old building while also building a new one. This argument ignores the fact that many of the items could have been easily corrected; other items only called for some plan of corrections; and some could have been completely waived. No attempt was made to conform with the Department's regulations. Furthermore, the purpose of the regulations is to protect the health and welfare of nursing home residents, and the mere fact that a safe building would be built in the future does not excuse placing the residents in danger until such a building is completed.

Mr. Rodvik chose to participate in this "bureaucratic program" and cannot now complain of its restrictions.

In light of our decision, we need not deal with the other issue raised on appeal. The trial court's judgment is reversed and the decision of the hearing examiner is affirmed.

All the Justices concur.