FIRST NATIONAL BANK OF ABERDEEN, Miguel M. Serna and Anita R. Serna, Plaintiffs and Respondents,

v.

Robert B. JACOBS, Kathleen C. Jacobs, Brown County, a Public Corporation, Louis Ludwig, Larson Concrete Co., Hub City Livestock Sales, Inc., South Dakota Wheat Growers Association, Redfield Livestock Auction, Inc., and Triple U Enterprises, Inc., Defendants,

and

Leaseamerica Corporation, Defendant and Appellant.

No. 11952.

Supreme Court of South Dakota.

Dec. 29, 1978.

Charles B. Kornmann of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for plaintiffs and respondents.

Terence A. O'Keefe of Siegel, Barnett, Schutz, O'Keefe & Jewett, Aberdeen, for defendant and appellant.

PORTER, Justice.

## CASE SUMMARY

This case involves ownership of a hog finishing barn near Aberdeen, South Dakota. The only parties involved in the appeal are the First National Bank of Aberdeen (Bank) and Leaseamerica Corporation (Leaseamerica). The Bank originally brought suit to foreclose the interest of defendants Mr. and Mrs. Jacobs in a half-section of land that the Jacobs were purchasing on contract for deed. Leaseamerica had leased the hog finishing barn to the Jacobs, and now claims that the barn did not become a fixture, but remained the personal property of Leaseamerica. Leaseamerica wishes to remove the barn, or in the alternative collect its reasonable value

from the Bank, which has foreclosed upon the land containing the barn. We hold that the upper, aluminum portion of the barn did not become a fixture, and that the Bank has no rights by subrogation to prior owners or lienholders that would defeat the rights of Leaseamerica. We also hold that the Bank may not have the building on the strength of its own mortgage, but that the Bank would be entitled to compensation for damage done to the land if Leaseamerica removes the building. We therefore reverse the judgment and remand the case to the trial court for determination of damages that might be caused to the realty by removal of the building, or for determination of the reasonable value of the building to be paid by the Bank to Leaseamerica, at the option of the Bank.

## FACTS

On October 21, 1971, Miguel and Anita Serna purchased a half-section of land in Brown County from Joseph Iverson. Iverson took back a mortgage and reserved a life estate interest so that he could live on the property until his death. On this same date, Robert and Kathleen Jacobs entered into a contract for deed with the Sernas. The Jacobs thereafter operated a farm, including a cattle and hog operation, on the half-section.

From March 13, 1973, until about September, 1974, the Bank was Jacobs' principal creditor. It loaned Jacobs nearly $200,-000.00 during this time. As of April 10, 1975, the debt had been reduced to $158,-319.90 through sale of personal property previously owned by Jacobs. Since paying off all prior interests, the Bank has the right to dispose of the land as it sees fit. The value of the land does not, however, equal the total of Jacobs' debt.

A Bank comment of May 3, 1974, indicates that Jacobs was negotiating with both Leaseamerica and Lease Northwest for a hog facility of the type which he eventually leased from Leaseamerica. Lease Northwest wanted to retain a security interest in the land; Leaseamerica apparently made no such demand. The building in question was

installed by the end of April, 1974. A lease was entered into on May 25, 1974, by which Jacobs agreed to pay $1,920.00 per quarter in lease payments. The lease provided that the building was to remain personal property, and that it was to remain the property of Leaseamerica. Jacobs was given no option to purchase the building. He was required to pay all taxes on the building. The lease covered only the aluminum walls and doors. Jacobs separately installed and paid for the concrete and block foundation. Leaseamerica claims no interest in this foundation.

The building is bolted to the concrete and block foundation. There are holding pits under the slated floor for hog waste. There is wiring and plumbing in the building. A system for grinding and delivering of feed is also present. The trial court found that removing the building would damage the real estate.

The Jacobs gave the Bank a mortgage on the premises on August 2, 1974, in return for a $75,000.00 loan. The Bank advanced an additional $13,900.00 on August 15, part of which was used, as shown by Bank records, to make a lease payment to Leaseamerica. The Bank concedes that it knew of the lease transaction, but did not inquire further, since it assumed that this was a lease-purchase agreement.

Leaseamerica filed a Uniform Commercial Code financing statement in the Brown County Register of Deeds office, but did not record anything in the chain of title to the land. Leaseamerica never paid taxes on the building, nor was it entered on the tax rolls as personal property. The leasing company also never bought insurance on the building, but the contract required Jacobs to buy insurance. The contract called for 18% interest when lease payments were late.

In January, 1975, the Bank paid the Sernas and Joseph Iverson for their mortgage and contract for deed interests in the property. This was done to protect the Bank's security as a junior lienor. The Bank obtained a satisfaction of the Iverson mortgage, which has not been recorded, and a warranty deed from the Sernas. The name of the grantee has not been filled in on the deed, but the Bank, since January 2, 1975, has had the right to complete the deed by putting any name, including its own, in the blank.

The trial court ruled that Leaseamerica had no interest in the premises, that it could not remove the building, and that it was not entitled to any compensation for leaving the building on the premises.

## ISSUES

The major issues presented by this appeal are:

Issue One:     Is the building a fixture?

Issue Two:     Is the Bank entitled to the building as the successor to the rights of the Sernas and Iverson?

## DECISION

ISSUE ONE:

We conclude that the building is not a fixture.

The controlling criterion in determining whether an article becomes a "fixture," and thus a part of the realty, is the intention of the party placing the article on the land. *Killian v. Hubbard*, 69 S.D. 289, 9 N.W.2d 700 (1943); *Metropolitan Life Ins. Co. v. Jensen*, 69 S.D. 225, 9 N.W.2d 140 (1943). This intent is not the secret intent in the mind, but the intent that may be deduced from the relation of the parties and the circumstances of the particular case. The physical facts are to be considered, particularly whether the article placed on the land is designed to promote the use to which the realty has been put. *Metropolitan Life Insurance Co. v. Jensen*, supra. The parties may, however, agree that the article placed on the land is to remain a chattel or is to become a fixture. *Home Owners' Loan Corporation v. Gotwals*, 67 S.D. 579, 297 N.W. 36 (1941); *Curran v. Curran*, 67 S.D. 119, 289 N.W. 418 (1939); *Myrick v. Bill*, 3 Dak. 284, 17 N.W. 268 (1883).

Under these rules, the building remained personalty as between Jacobs and Leaseamerica. Their agreement, although a form contract, is explicit on this point. The record does indicate that the agreement was signed *after* the building was installed. As we held in *Home Owners' Loan Corporation v. Gotwals,* supra, however, even property that has been a fixture can become personal property by agreement.

We must also inquire whether the building became a fixture as between the Sernas and Iverson and Leaseamerica. The Bank claims any rights that the Sernas and Iverson had as their assignee or as a redeeming junior lienholder under SDCL 44–3–4 to 44–3–7. *See* SDCL Ch. 43–42; *First National Bank, Bismarck v. O'Callaghan,* 143 N.W.2d 104 (N.D.1966). This determination involves the question of Jacobs' intent as shown by the facts of the case. *Metropolitan Life Insurance Company v. Jensen,* supra. There were no agreements between the Sernas and Iverson and Leaseamerica. The building was securely attached to a concrete and block foundation, and was adapted to the purpose for which the land was used. Jacobs was a mortgagor and contract for deed vendee, which could arguably indicate that he intended to attach the building to the land. *See Metropolitan Life Insurance Company v. Jensen,* supra.

The lease contract, on the other hand, expressly declares the parties' intent that the building is to remain personal property. The Bank attacks this agreement as one-sided, and contends that it was probably not understandingly entered into. There is, however, no finding to this effect, and no evidence on the record to indicate that the agreement was not voluntarily and understandingly made. As Leaseamerica points out, Jacobs was in a difficult position financially in mid-1974. By entering into this lease, he was able to have a new hog finishing barn at once for an initial payment of about $2,000.00. He could, therefore, very well have intended to have the barn remain personal property, since having it remain so was beneficial to him. The lease confirms this intent, and is an express declaration that Jacobs wanted the building to remain personal property. The trial court's finding that Jacobs' intent is "unknown" therefore has no support in the evidence, and is clearly erroneous. SDCL 15–6–52(a).

The Bank argues that Leaseamerica should not be permitted to take advantage of its agreement as evidence of Jacobs' intent because the agreement was never recorded. The agreement is thus said to be evidence only of Jacobs' "secret" intent, *Metropolitan Life Insurance Co. v. Jensen,* supra, not of his intent as manifested by the facts. The Bank, however, *knew* that the transaction was a lease. It failed to inquire further and "assumed" that it was a lease-purchase agreement. Leaseamerica concedes that it should have done more to protect its rights. The record indicates that this is true. The Bank would, however, have found out about the details of the lease if it had inquired. The Bank did have *actual* notice of the lease. In addition, notice of the lease was *filed* (although not recorded) in the Brown County Register of Deeds office on May 28, 1974, three days after the lease was signed. The parties' intent was, therefore, not "secret." Although recording the lease in the chain of title might have been a better practice, public notice of the parties' intent was available after May 28, 1974.

The Bank argues, finally, that the property became a fixture as against the Sernas and Iverson because the agreement was not recorded, the prior mortgagee and owners were not notified, and their consent was not obtained. The argument continues that the property became a fixture because it was physically attached to the land without any notice to these parties. *See Leawood National Bank v. City National Bank & T. Co.,* 474 S.W.2d 641 (Mo.App.1971); *Appliance Buyers Credit Corp. v. Crivello,* 43 Wis.2d 241, 168 N.W.2d 892 (1969). We believe this argument would impose too great a penalty on Leaseamerica for its failure to record the agreement or seek prior consent from the owners and the mortgagee. Jacobs, as contract for deed vendee, certainly had the

right to bring personal property onto the land in furtherance of his use of the land, and Leaseamerica did have an express contract with him. The prior interests of the Sernas and Iverson are damaged only to the extent that the land is damaged. They are, therefore, adequately compensated by our disposition of the appeal as set forth below.

### ISSUE TWO:

We conclude that the Bank is not entitled to the building as the successor to the rights of the Sernas and Iverson.

The Bank can have as assignee of the rights of the Sernas and Iverson, or as a redeeming junior lienholder under SDCL 44-3-4 to 44-3-7, only such rights as the Sernas and Iverson had.

We must, therefore, determine what rights the Sernas and Iverson had. These rights provide the outer limits of the Bank's rights under the assignments. *First National Bank of Bismarck v. O'Callaghan,* supra; *First National Bank of Minot v. MacDonald Const. Co.,* 137 N.W.2d 667 (N.D.1965). Under the agreement between Jacobs and Leaseamerica, the building remained personal property. *See* cases cited in *Issue One.* The real property mortgage and contract for deed of the Sernas and Iverson thus did not have this building as part of their security. There would be no rights for the Bank to assert, under this mortgage and contract for deed, to the Leaseamerica building.

The Bank argues, however, that Leaseamerica should lose the building because it was a trespasser on the land as against the Sernas and Iverson. This is because Leaseamerica did not seek or receive the consent of the owners and mortgagee before it installed the building. *See Milford v. Tenn. River Pulp & Paper Co.,* 355 So.2d 687 (Ala. 1978). The record indicates that the owners and mortgagee may not even have had notice of the lease. We agree that Leaseamerica should have obtained the consent of the Sernas and Iverson, but we disagree with the remedy that the Bank advocates. If Leaseamerica insists on removing its property, we conclude that it should be re-quired to pay the Bank for whatever damages such removal causes to the land. In the alternative, the Bank may choose to pay Leaseamerica the reasonable value of the building.

### OTHER ISSUES:

The Bank also contends that it should be able to keep the building on the strength of its own August 2, 1974, mortgage. This contention is without merit, since the Bank took the mortgage with full knowledge of the lease agreement and without inquiring into what type of lease it was. The record also indicates that the Bank did not finance this building and did not depend on it to secure its mortgage. To give the Bank the building under such circumstances would be an unjust windfall to the Bank at the expense of Leaseamerica. Where a person attempts to enrich himself unjustly at the expense of another, the law will imply a contract, sometimes referred to as a quasi-contract, in order to prevent the unjust enrichment. *Ringgenberg v. Wilmsmeyer,* S.D., 253 N.W.2d 197 (1977) (per Winans, J., with Dunn, C. J., concurring); *Thurston v. Cedric Sanders Company,* 80 S.D. 426, 125 N.W.2d 496 (1963); *Mahan v. Mahan,* 80 S.D. 211, 121 N.W.2d 367 (1963).

We do believe, however, that Leaseamerica failed to guard its rights as noted above. We therefore remand the case to the trial court to determine an appropriate amount to be paid to the Bank for damage that might be done to the real estate by removal of the building. If Leaseamerica pays such an amount, the Bank will still have the full value of the land to secure its loan. In the alternative, the Bank may pay Leaseamerica the reasonable value of the building. Under this disposition, both parties will lose money, but both will receive essentially what they bargained for.

The Bank's next claim is that it should have the building as security, even if the building is personal property, since it filed a Uniform Commercial Code, Article 9, financing statement on April 18, 1974. The financing statement gave it security in af-

ter-acquired personal property. This contention fails for two reasons. First, Article 9 does not apply to the lease in this case, which was not intended as a security device, SDCL 57–35–2, U.C.C. § 9–102(1) (1962 version). Second, the financing statement itself covered only property in which Jacobs had an ownership interest, not property he leased. The Bank thus is not entitled to the building as personal property security for its loans.

The Bank also claims that the eighteen per cent interest called for in the case of late lease payments to Leaseamerica is usurious. This may be true, but it does not affect the result of this case. None of the money that Leaseamerica claims to be due it is interest on late payments. *See* SDCL 54–3–12 (1978 Supp.). In addition, Leaseamerica owns the building as personal property. The payment or non-payment of any interest does not affect Leaseamerica's ownership. The lack of a small loan license under SDCL 54–4 is also irrelevant, since it does not appear from the record that Leaseamerica has engaged in the business of making small loans in South Dakota.

The Bank's final contention is that Leaseamerica should not have been relieved from its default for failing to answer within thirty days of service, SDCL 15–6–4(a), *Gilliland v. Courtesy Motors, Inc.*, S.D., 232 N.W.2d 828 (1975). The affidavit in support of Leaseamerica's motion was not made by a corporate officer. This contention fails for two reasons. First, the Bank waived the point by asking for and accepting $500.00 in terms assessed by the trial court. Second, the Bank has not cross appealed the propriety of the court's order relieving the default. The time for filing a notice of appeal has long since expired. Since this filing is jurisdictional, the question is not before us. *Long v. Knight Construction Co., Inc.*, S.D., 262 N.W. 2d 207 (1978).

## CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand the case to the trial court for determination of damage that would be done to the land by Leaseamerica's removal of the building, or for determination of the reasonable value of the building to be paid by the Bank to Leaseamerica, at the option of the Bank.

All the Justices concur.