In the Matter of the SOLID WASTE DIS-POSAL PERMIT APPLICATION OF the COUNTY OF CLAY AND the CITY OF VERMILLION For a Site Located at the North 890 Feet of the East 660 Feet of the Southwest Quarter (SW ¼) of the Northwest Quarter (NW ¼), Section 34, Township 93, North Range 52 West of the 5th P. M., Clay County, South Dakota.

No. 12991.

Supreme Court of South Dakota.

Argued May 21, 1980.

Decided July 23, 1980.

Martin Weeks, Jr., of Bogue, Weeks & Rusch, Vermillion, for appellants Spirit Mound Tp. and Goldie Severson.

Curtis G. Wilson, Asst. Atty. Gen., Pierre, for appellee State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Jeffrey P. Masten, Canton, for appellee City of Vermillion.

DUNN, Justice.

This is an appeal from the affirmance by the circuit court of the decision of the South Dakota Board of Environmental Protection (Board) granting to the City of Vermillion (City) and the County of Clay (County), a

permit to operate a solid waste disposal site. We affirm.

On June 26, 1974, the County adopted a Solid Waste Management Plan for submission to the South Dakota Department of Environmental Protection.[1] That plan contemplated extensive cooperation with the City in financing, developing and operating a solid waste landfill. One of the plan's provisions stated that the City would submit the application for a permit to operate the landfill.

Efforts to find an acceptable site during the two years following adoption of the county plan were unsuccessful. Because the old landfill was nearly exhausted and was causing operation difficulties at the Vermillion airport, it was important that a new and acceptable site be located. At that point, Mr. James R. Johnson offered the use of the site in question which could be acquired by lease and without the necessity of condemnation proceedings.

On July 28, 1976, the City submitted an application for a solid waste disposal permit for the Johnson site on behalf of the County and itself. A contested case hearing was held by the Board on September 2, 1976, at the request of appellants. At the hearing, expert witnesses for the Department testified that the Johnson site would not pollute surface water nor detrimentally effect any underground water for domestic use. They testified that the landfill would not decrease air quality at the site and, in fact, would improve the overall air quality in the area by replacing a burning dump with a sanitary landfill. The site met all departmental regulations, and from a geologic standpoint was "totally acceptable."

Mr. Johnson, who was to operate the site under a contract with the City, testified about its operation. He stated that machinery would normally be operated only two and one-half hours a day, most of which would be in a trench at a depth of sixteen to twenty feet. Blowing paper was to be controlled by compacting and covering with dirt, by berms which are rows of dirt extending above the trench, by movable fences which surround the trench, and by hiring extra help to clean up in the event extraordinary winds would blow paper out of the trench.

Appellant Severson contended that the landfill would upset the tranquility of her rural home. There was also testimony that traffic would increase on the road to the landfill and that property values near the landfill would diminish. Other evidence indicated that there were several other sites which would have been suitable as a location for the landfill.

Based on the testimony and exhibits received at the September 2, 1976, hearing the Board found there would be no pollution, impairment or destruction of the air, water or natural resources resulting from the project. On September 28, 1976, the Board issued the permit.

On September 23, 1976, these appellants and others had commenced a companion action for injunctive and declaratory relief. The complaint alleged several causes of action including: A claim that the location of the dump at the proposed location would pollute air, soil, water and other natural resources; a claim that the City's selected site was not the best alternative of several possible sites; and a claim that the chosen method of disposal was not the best of several available alternative methods.

The trial court set a pretrial conference for both the injunction action and the appeal hearing, and heard several motions. The court first denied the appellants' motion to consolidate the appeal and the injunction action for trial; then denied the appellants' motion to hold the appeal hearing in abeyance until after the trial of the injunction action.

The decision of the Board was affirmed by the trial court following a de novo review of the record and the taking of addi-

---

1. The Department of Environmental Protection was abolished in 1979 and its Solid Waste Division was transferred to the Department of Health. However, for the purposes of clarity and to promote consistency with the record, the Department of Environmental Protection will be referred to as the Department throughout the opinion.

tional testimony. The trial court later concluded, however, that it should have limited itself to an administrative review of the record based on the "substantial evidence" test. The court nevertheless went on to find that evidence introduced at the de novo hearing had failed to show significant adverse environmental impact. It also found that the Board's decision was supported by substantial evidence. Spirit Mound Township and one of the landowners seek to reverse the affirmance of the Board's decision. The Department, the City, and the County seek to uphold that decision.

◼ Appellants' first argument is that the County's failure to submit plans or join in the plans and application submitted by the City deprives the Board of jurisdiction over this matter. It is true that the application was submitted on behalf of both the City and the County. However, the County's waste management plan clearly contemplated the City submitting the application and did not prohibit the application from being submitted in the County's behalf as well. Furthermore, the County did not object to its name being on the application prior to or during the Board hearing, nor does it argue this point on appeal. Finally, it does not matter whether the County's name appears on the application, because SDCL 34A–6–38 gives the Board authority to issue a permit to the City to operate a disposal site individually or in conjunction with the County.

Appellants argue that the Board too narrowly restricted its consideration of environmental factors in reaching its decision. We find, however, that the scope of consideration used by the Board was precisely in accordance with SDCL 34A–6 and 34A–10.

◼ An administrative agency may exercise only the jurisdiction delegated to it by the legislature. *Valley State Bank of Canton v. Farmers State Bank*, 87 S.D. 614, 213 N.W.2d 459 (1973). This rule was applied in *Matter of Solid Waste Disposal Permit, Etc.*, 268 N.W.2d 599 (S.D.1978), which we find controlling. In *Matter of Solid Waste Disposal Permit, Etc.*, we found

that SDCL 34A–6–8 specifically limits the Board's jurisdiction, and that the Board need not take a "hard look" at factors such as zoning ordinances, aesthetics, and the effect on property values. SDCL 34A–6–8 allows the Board to consider only matters of disposal, such as acceptability of the disposal method and suitability of the site. A sanitary landfill such as the one here is an acceptable method of disposal. SDCL 34A–6–5. Criteria for the disposal site are set forth in ARSD 34:13:03:10. In its findings, the Board satisfied its duty under SDCL 34A–6 by determining that the proposed landfill met the disposal site criteria. In *Matter of Solid Waste Disposal Permit, Etc.*, we adopted a narrow approach to administrative decisions under SDCL 34A–6 and left matters of local concern to local forums. We did this rather than allow all environmental factors into permit proceedings before the Board. Specifically, we stated:

> The appellants have been granted a local forum in which all the relevant factors they want to present may be more appropriately considered. To grant the Board jurisdiction beyond that conferred by SDCL 34A–6–8 would not only be erroneous but also duplicitous in light of our holding in *Lincoln County v. Johnson*, supra [S.D., 257 N.W.2d 453].

268 N.W.2d at 602. Hence, the Board properly interpreted its scope of jurisdiction in the instant matter.

◼ By virtue of SDCL 34A–10, the scope of the Board's consideration was expanded when pleadings were filed by appellants alleging that granting the permit would result in pollution of air and water. SDCL 34A–10–2. We find, however, that there was substantial evidence to support the Board's findings that *no pollution, impairment,* or *destruction* of the air or other *natural resources* would result from the project. SDCL 1–26–36.

◼ The burden of showing that pollution would occur was clearly on the appellants at the Board hearing, *Matter of Solid Waste Disposal Permit, Etc.*, supra. The

Board's findings that the proposed site met all regulations and would not cause pollution need only be supported by substantial evidence. SDCL 1–26–36.[2] *Dail v. South Dakota Real Estate Com'n*, 257 N.W.2d 709 (S.D.1977). The question is not whether there is substantial evidence to the contrary. *Application of Ed Phillips & Sons Company*, 86 S.D. 326, 195 N.W.2d 400 (1972).

We find substantial evidence to support the Board's findings. There was a great deal of evidence from diverse sources to the effect that the surface and ground water would not be detrimentally affected, that the air quality would not decline, that the landfill met all Department regulations, and that the proposed site was geologically acceptable. Furthermore, Mr. Johnson, who had contracted to operate the landfill under city supervision, and the city manager carefully outlined operation procedures designed to control any prospective problems. The only evidence to the contrary presented to the Board was that land values may decrease, that there were other more acceptable sites and that pest and litter control would not be effective.

■ The Board was not required to consider the acceptability or superiority of alternative sites, because appellants had not convinced the Board that pollution would result from the proposed project. SDCL 34A–10–8. The trial court also entered a finding that no pollution would result, and even made an additional finding that appellants had not carried the burden of showing prudent alternative sites.

■ In any event, the question is whether the proposed site is acceptable, not whether there are others that are comparable or superior. *City of Brookings v. Dept. of Environ. Prot.*, 274 N.W.2d 887 (S.D. 1979). It is preferable to grant permits to acceptable disposal sites rather than engage in an endless search for the perfect site.

■ With regard to pest control, litter control, and other similar matters, such evidence relates to the operation of the site and does not enter into the decision on whether to grant the permit. Moreover, there was ample evidence before the Board outlining the proposed plans to control such operation problems.

■ Appellants · contend that the trial court should have conducted a de novo hearing, and that such a hearing would have produced evidence sufficient to warrant a denial of the permit. The trial court did, indeed, conduct a de novo hearing and received additional evidence and testimony, but later agreed that SDCL 1–26 controlled and made such additional evidence improper. The trial court then entered its findings based upon the "substantial evidence" test of the administrative record. It was correct for the lower court to restrict itself to the evidence presented to the Board at the initial hearing, and there is substantial evidence in this record to support the Board's findings. The lower court made additional findings to the effect that, even if the de novo hearing had been considered, there would have been no· change in the findings.

Appellants argue that a Michigan case, *Superior Public Rights, Inc. v. Dep't. of Natural Resources*, 6 ELR 20435, supports the argument for a de novo proceeding. This Michigan case, however, is merely a lower court decision. The Michigan Supreme Court has not yet spoken on this point. This court has spoken, however, in *Matter of Solid Waste Disposal Permit, Etc.*, when we stated that the "substantial evidence" test was proper in this type of situation.

■ Finally, appellants contend the lower court was in error by refusing to

---

**2.** SDCL 1–26–36 was amended on July 1, 1978, replacing the "substantial evidence" test with the "clearly erroneous" test. The proceedings in this matter, however, were conducted in the circuit court before this amendment took effect. Rather than have the circuit court view the agency's decision under the substantial evi-

dence test and then have us apply the clearly erroneous test to the same findings, we prefer to review this case on the same standard as the circuit court. The case of *Piper v. Neighborhood Youth Corps*, 90 S.D. 443, 241 N.W.2d 868 (1976), supports this approach.

consolidate the injunction action with this matter. It is widely held that the trial court has wide discretion in deciding whether to consolidate actions. *Burlington Transp. Co. v. Josephson*, 153 F.2d 372 (8th Cir. 1946). Consolidation should be denied where it would lead to confusion rather than clarification. *Independent School Dist. v. First Nat. Bank*, 67 S.D. 100, 289 N.W. 425 (1939). Both of these actions are complex, and the trial court was well within its discretion to deny consolidation.

The judgment of the trial court is affirmed.

All the Justices concur.