DAKOTA HARVESTORE SYSTEMS, INC., Defendant and Appellant,

v.

SOUTH DAKOTA DEPARTMENT OF REVENUE, Plaintiff and Appellee.

No. 13875.

Supreme Court of South Dakota.

Considered on Briefs Feb. 17, 1983.

Decided March 30, 1983.

Rehearing Denied May 4, 1983.

Frank P. Gibbs of Simons, Gibbs, Feyder & Myers, Sioux Falls, for defendant and appellant.

Gene R. Woodle, Asst. Atty. Gen., S.D. Dept. of Revenue, Pierre, for plaintiff and appellee.

HENDERSON, Justice.

## PROCEDURAL HISTORY

In 1981, the South Dakota Department of Revenue (the Department) audited Dakota Harvestore Systems, Inc. (Harvestore) for the fiscal periods of January 1, 1978, to December 31, 1980. As a result of the audit, the Department determined that Harvestore owed $40,125.42 in contractor's excise tax pursuant to SDCL 10–46A–1. An administrative hearing was conducted by the Secretary of Revenue on May 28, 1981, with findings of fact, conclusions of law, and an order entered in favor of the Department during November of 1981. Harvestore filed notice of appeal to the circuit court on December 3, 1981. On January 30, 1982, the parties entered into a stipulation of facts. The appeal was heard on April 21, 1982, in circuit court, Minnehaha County, and the administrative order was affirmed on April 27, 1982. We affirm.

## FACTS

Harvestore, who sells and installs farm silos, concedes that the contractor's excise tax of SDCL 10–46A–1 applies to units sold directly to the farmer by Harvestore. At issue is Harvestore's other method of distribution which involves a sale by Harvestore to Agristor Leasing, Inc. (Agristor), who in turn leases the silo to the farmer, with Harvestore installing the structure. In the lease, title to the silo remains with Agristor and upon a farmer's default, Agristor can remove the silo. The parties' lease denominates the silo as personal property. When the lease terminates, the farmer can: (a) return the silo to Agristor; (b) extend the lease; or (c) purchase the silo at its fair market value.

Harvestore contends that the leased silos are not improvements to real property under SDCL 10–46A–1 because of the parties' intent and the ease of which the units may be removed by Agristor. The silos generally weigh five tons, are up to 90 feet in height, and are affixed with anchor bolts to heavy concrete slabs. Removal of the silos involves raising the structure, then removing each ring in five-by-nine foot sections.

## ISSUES

### I.

ARE LEASED SILOS, WHICH ARE ANCHORED TO CONCRETE SLABS, IMPROVEMENTS TO REAL PROPERTY AND THEREFORE SUBJECT TO SDCL CHAPTER 10–46A, THE CONTRACTOR'S EXCISE TAX?

### II.

WAS THE ADMINISTRATIVE AGENCY'S DECISION CLEARLY ERRONEOUS?

## DECISION

### I.

SDCL 10–46A–1, the contractor's excise tax, provides:

There is hereby imposed an excise tax upon the gross receipts of all prime. contractors and subcontractors engaged in realty improvement contracts, at the rate of one and one-half percent.

Further, by reference, SDCL 10–46A–2 includes contractors who construct silos within the classification of "prime contractors" in SDCL 10–46A–1. Although it is conceded that Harvestore is a contractor within the meaning of SDCL ch. 10–46A, Harvestore asserts that SDCL 10–46A–1 is inapplicable because the leased silos are intended to be personalty and therefore are not "realty improvement contracts."

SDCL 43–1–3 delineates real property as: "That which is affixed to land." SDCL 43–33–1 then provides:

A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws.

■■■■ We also have looked to general factors to aid in our determination: (a) annexation to the realty, either actual or constructive; (b) its adaptability to the use and purpose for which the realty was used; and (c) the intention of the party making the annexation. *Metropolitan Life Ins. Co. v. Jensen,* 69 S.D. 225, 9 N.W.2d 140 (1943). Among the generalized factors, the intention of the party making the annexation is controlling. *First Nat'l Bank of Aberdeen v. Jacobs,* 273 N.W.2d 743 (S.D.1978). As we held in *First Nat'l Bank,* 273 N.W.2d at 746:

This intent is not the secret intent in the mind, but the intent that may be deduced from the relation of the parties and the circumstances of the particular case. The physical facts are to be considered, particularly whether the article placed on the land is designed to promote the use to which the realty has been put.

We opt to look at the objective circumstances and not the subjective agreement of the parties. If the rights of third parties are

not prejudiced, parties, *as between themselves,* are free to imbue fixtures with the legal character of realty or personalty (emphasis added). *Curran v. Curran,* 67 S.D. 119, 289 N.W. 418 (1939).

■ We hold that SDCL 10–46A–1 is not ambiguous in its language or coverage. Our statutes unequivocably guide us in determining that leased silos are, for taxation purposes, real property. This result is enforced by application of the general factors we have set forth above. Regardless of the intention set forth in leasehold agreements, silos are placed upon farm land to promote the use for which the realty has been put. The construction of these silos onto a concrete slab with anchor bolts is taxable under SDCL 10–46A–1 as a realty improvement.

## II.

■ Although both counsel assert that the correct standard of review for an administrative agency decision is to ask if "substantial evidence" exists to support the agency's findings, we disagree. The "substantial evidence" standard set forth in *Matter of Solid Waste Disposal, Etc.,* 295 N.W.2d 328 (S.D.1980); *State Dep't of Social Servs. v. Rodvik,* 264 N.W.2d 898 (S.D. 1978); *Application of Ed Phillips & Sons Co.,* 86 S.D. 326, 195 N.W.2d 400 (1972); and *McKinnon v. State Banking Comm'n,* 78 S.D. 407, 103 N.W.2d 179 (1960), is no longer applicable. In accord with the 1978 amendment of SDCL 1–26–36, on review, we now uphold a ruling or decision of an administrative agency unless, in light of the entire record, the decision is clearly erroneous or we are left with a firm and definite conviction that a mistake has been made. *Fraser v. Water Rights Comm'n, Etc.,* 294 N.W.2d 784 (S.D.1980). In our review of the administrative record, we are not bound by a presumption that the circuit court was correct. *Matter of Clay-Union Elec. Corp.,* 300 N.W.2d 58 (S.D.1980); *Matter of South Lincoln Rural Water Sys.,* 295 N.W.2d 743 (S.D. 1980).

■ After examining the record herein, we are convinced the decision of the De-

partment of Revenue was not clearly erroneous.

Affirmed.

FOSHEIM, C.J., and DUNN and MORGAN, JJ., concur.

WOLLMAN, J., concurs specially.

WOLLMAN, Justice (concurring specially).

Although I agree with the result reached by the majority, I am concerned with language in the majority opinion that could be interpreted as undermining the preeminence of the intention test that we most recently recognized in *In re Tax Appeal of Logan and Assocs.,* 331 N.W.2d 281 (S.D. 1983). Since an agreement entered into by the party making the annexation is relevant in determining the intention of that party, the statement in the majority opinion that "[w]e opt to look at the objective circumstances and not the subjective agreement of the parties," should not be taken literally to mean that an agreement between parties is to be given no credence in determining the nature of the property. *See, Logan, supra.*

We must consider all the circumstances of a particular case. *First Nat'l Bank of Aberdeen v. Jacobs,* 273 N.W.2d 743 (S.D.1978). The parties to this action entered into a stipulation of facts which discloses that the structures vary in diameter from fourteen to thirty-one feet and in height from twenty-two to ninety feet, and that they may weigh as much as five tons. The silos are installed on a concrete slab that is approximately one foot larger than the unit which is installed. The parties also stipulated that the head of the Department's property tax program would testify that the silos are treated as real property for property tax purposes, and appellant concedes that the contractor's excise tax is applicable to situations in which the silos are sold directly to the customer.

In addition to the lease agreement's reference to the silo as personal property, the silo is financed as personal property under

the Uniform Commercial Code. In a similar case, the Supreme Court of Wisconsin held that the fact that a silo is financed under the Uniform Commercial Code is not controlling for purposes of taxation. *Wisconsin Dep't of Revenue v. A.O. Smith Harvestore,* 72 Wis.2d 60, 240 N.W.2d 357 (1976). The *Smith Harvestore* opinion states that "it can be said as a matter of law that the average farmer, when purchasing a Harvestore [silo], intends to make a permanent accession." 240 N.W.2d at 361.

An additional fact that distinguishes this case from *Logan, supra,* is the relationship of the parties *vis-a-vis* the realty upon which the silo was placed. In *Logan,* the property was placed by a tenant upon leased realty. Here, the silo was erected upon land owned by the lessee of the silo. As the Wisconsin Court stated in the *Harvestore* case, *supra:*

> Finally, it must be conceded that respondent relies heavily upon cases and authorities that refer to trade fixtures, or to relations between landlords and tenants. This court has pointed out the fallacy of carrying over fixtures cases in one classification to another classification, where the status and relations of the parties are different. Such a warning is especially appropriate in this case. Where a tenant installs fixtures, there is a presumption that they are temporary and that he intends to remove them at the end of the lease period. In fact, the appellant here concedes that it does not regard as fixtures those relatively few Harvestores sold to tenant farmers. The rule is different, however, when an owner purchases a structure, and has it erected on realty which he owns. In such a case there must be a marked tendency to regard the annexed property as realty, as long as the other criteria are satisfied.

240 N.W.2d at 363 (footnotes omitted).

This is not to say, of course, that the silos in question would not be classified as real property improvements if they were placed upon leased or mortgaged property. In those situations, according to the stipulation of facts, the landowner-lessor or mortgagee is required to sign severance agreements or waivers of any interest in the silos. *See* SDCL 43-33-2.

After considering all the circumstances of this case, I cannot say that the South Dakota Department of Revenue was clearly erroneous in its determination.