# STATE OF MICHIGAN

# COURT OF APPEALS

CARL E. BRITTAIN and HEIDI S. BRITTAIN,

        Plaintiffs/Cross Defendants-
        Appellants,

v

FIRST MERIT BANK also known as FIRST
MERIT BANK N.A.,

        Defendant/Cross Plaintiff-Appellee,

and

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.,

        Defendant.

UNPUBLISHED
November 22, 2016

No. 328365
Jackson Circuit Court
LC No. 14-000854-CH

Before: OWENS, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

In this action alleging a wrongful foreclosure, plaintiffs, Carl and Heidi Brittain, appeal as of right the trial court's sua sponte order granting summary disposition to defendant First Merit Bank.[1] For the reasons stated below, we affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On April 1, 2014, plaintiffs filed a complaint seeking to quiet title to their family home located at 3043 Hatch Rd in Jackson, Michigan, and alleging claims against defendants for wrongful foreclosure and slander of title. Defendant First Merit Bank had begun foreclosure

---

[1] "Defendant" in this opinion will refer to defendant/cross plaintiff First Merit Bank. According to defendant First Merit Bank, defendant Mortgage Electronic Registration Systems, Inc., was a nominee for First Merit Bank's predecessor, Republic Bank, and assigned the mortgage to First Merit on February 12, 2014.

-1-

proceedings. In their complaint, plaintiffs alleged that the promissory note and mortgage that defendant relied on to foreclose the property were invalid because plaintiffs never signed the documents. Plaintiffs acknowledged that in 2003 and 2004 they obtained several loans, but they claimed that these loans were all related to a business they operated and were secured by other properties that plaintiffs owned. In an affidavit attached to the complaint, plaintiff Heidi Brittain averred that she was not aware of the mortgage on their property until 2013, that plaintiffs had never seen the promissory note and mortgage agreement, and that their signatures were fraudulently placed on the documents.

Defendant filed a counter-complaint, alleging that plaintiffs had applied to defendant's predecessor for a $490,000 loan of which, according to plaintiffs, $385,000 was to be used to pay off their existing mortgage on the family home owed to Standard Federal Bank. According to defendant, a promissory note was executed by plaintiffs on October 3, 2003, which was secured by a mortgage on the family home. Defendant also noted that plaintiffs defaulted on the note, that defendant commenced foreclosure proceedings, and that defendant purchased the property for $301,750 following a sheriff's sale. Following this sale, defendant claimed that plaintiffs owed defendant $128,640.44.

In a second affidavit, Heidi Brittain claimed that in 2003, plaintiffs intended to obtain one loan for their business and that their plan "was to refinance the commercial properties that were associated with the business and payoff and remove all liens and mortgages on our home on Hatch Road so there would be no risk of losing it if the business failed." She further claimed that plaintiffs continued to make payments on the loan thinking that they were related to the business loans. In 2008, plaintiffs received notice from defendant's predecessor that foreclosure proceedings would begin on the family home if they did not cure the default. Plaintiffs cured the default and brought the loan current. According to Heidi Brittain, plaintiffs then attempted to contact defendant's predecessor to figure out why the family home was subject to foreclosure when the loan, as understood by plaintiffs, was secured by their business properties, and were informed by defendant's predecessor that there was not a mortgage on the family home according to their records. Around the same time, plaintiffs received notice from defendant's predecessor that they were delinquent on their property taxes and that they would be required to reimburse defendant's predecessor if it was forced to pay the taxes to protect its mortgage lien. In 2013, plaintiffs were notified that they again were in default on their loan and were required to pay $9,600.54 to cure the default. After they failed to cure this second default, defendant initiated the foreclosure proceedings that are the subject of this case.

Along with filing the complaint on April 1, 2014, plaintiffs also filed an ex parte emergency motion for a temporary restraining order, seeking to enjoin defendant from conducting a foreclosure sale. A sheriff's sale had previously been scheduled for April 2, 2014. The court granted the motion in an order stating that "the redemption period is stayed" and that "Defendants are hereby enjoined and prohibited from furthering the foreclosure," and scheduling a hearing to determine whether a preliminary injunction should be granted. Despite the temporary restraining order, Jim Hobbs, a deputy with the Jackson County Sheriff's Department, conducted a sheriff's mortgage sale of plaintiffs' family home on April 2, 2014. Deputy Hobbs attested in an affidavit that he had not been served with the order until after the scheduled sale.

In its response to plaintiffs' motion, defendant denied that the documents were fraudulently obtained, noting that plaintiffs entered into the agreement over 10 years earlier, receiving $97,607.79 in cash and $388.346.46 that was transferred to Standard Federal Bank to pay off plaintiffs' preceding mortgage on the family home. At the hearing, plaintiffs again argued that the promissory note and mortgage for their family home was fraudulently obtained and that they never signed the documents. Plaintiffs specifically cited to a difference in Carl Brittain's signature on the note compared to other documents. Defendant argued that plaintiffs did not meet any of the factors necessary to award injunctive relief, particularly the likelihood of success on the merits. Defendant noted that plaintiffs had not presented any evidence of fraud. The court found that plaintiffs did not have a strong likelihood of success on the merits, so it denied plaintiffs' motion for a preliminary injunction and dissolved the temporary restraining order.

On November 6, 2014, the court administratively closed the case after plaintiffs filed for bankruptcy in federal court. On January 13, 2015, the bankruptcy court lifted the stay to allow defendant to "enforce its security interest and liquidate the property." Shortly thereafter, defendant filed an eviction action in the 12th District Court, seeking to recover possession of the foreclosed family home. Defendant obtained a possession judgment from the district court, which plaintiffs then appealed to the circuit court.

On February 9, 2015, plaintiffs filed a motion to set aside the foreclosure sale. They argued that the sale was invalid because it violated the trial court's temporary restraining order. Defendant claimed that the temporary restraining order did not prohibit the sheriff sale, which was already scheduled, from proceeding because it did not enjoin Hobbs from doing anything and it was not timely served. The trial court denied plaintiffs' motion, essentially for the reasons advanced by defendant. In addition, the court proceeded to analyze the merits of plaintiffs' claims, stating that the plaintiffs had offered no evidence to validate their claims that they did not sign the promissory note or mortgage. At the end of the order, the court stated, "This shall be a final order closing this case, unless further orders are necessary to enforce this order."[2]

Plaintiffs then filed a motion for reconsideration, noting that the only proceeding before the court was plaintiffs' motion to set aside the foreclosure sale, which did not involve the underlying claim that the promissory note and mortgage were invalid. Plaintiffs argued that the court had no authority to grant summary disposition when no party had filed a motion for summary disposition. Defendant argued that summary disposition was appropriate, citing to several documents in the record, including a personal financial statement that plaintiffs had submitted in 2003 which acknowledged the loan they owed on the family home; the bankruptcy filing from their business, which did not list the loan in question; plaintiffs' 2012 and 2013 personal income tax returns, which listed deductions for mortgage interest payments; and an insurance policy plaintiffs obtained on the family home that listed defendant as a mortgagee on the property. Defendant also argued that plaintiffs had no standing to pursue the case because

---

[2] The circuit court also denied plaintiffs' motion to enjoin defendant from taking possession of the property, filed by plaintiffs as an appeal of the district court's judgment of possession.

their claim belonged to the bankruptcy trustee. The trial court denied the motion, stating that plaintiffs lacked standing and that collateral estoppel and judicial estoppel arising out of the bankruptcy proceedings barred their claims.

## II. ANALYSIS

Plaintiffs first argue that the trial court improperly dismissed their complaint because it did not have the authority to sua sponte grant summary disposition in defendant's favor. We disagree.

We review de novo a trial court's order granting summary disposition. *Wilson v King*, 298 Mich App 378, 381; 827 NW2d 203 (2012). MCR 2.116(I)(1) allows a trial court to sua sponte grant summary disposition. *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009); see also *Boulton v Fenton Twp*, 272 Mich App 456, 462-463; 726 NW2d 733 (2006). MCR 2.116(I)(1) provides: "If the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay." "The rule does not expressly require a motion under MCR 2.116(C) in order to grant summary disposition; nor does the rule in question expressly forbid summary disposition absent a motion under MCR 2.116(C)." *Boulton*, 272 Mich App at 462. If one of the two conditions set forth in the rule are met, the court is required to "render judgment without delay," *id*., unless to do so would contravene a party's due process rights, *Al-Maliki*, 286 Mich App at 489.

The trial court in the instant case did not cite the court rule under which it summarily dismissed the case; however, it observed that, apart from Heidi Brittain's affidavits, plaintiffs had failed to provide evidence to support the validity of their claim that the signatures on the mortgage documents for the subject property were not theirs. We conclude from this observation that the trial court granted summary disposition under MCR 2.116(I)(1) on the ground that "the affidavits or other proofs show that there is no genuine issue of material fact." *Boulton*, 272 Mich at 462; see *Verna's Tavern, Inc v Heite*, 243 Mich App 578, 584-585; 624 NW2d 738 (2000) (indicating that failure to state the particular court rule under which summary disposition is granted does not preclude appellate review where the trial court record is sufficient to permit review).

Plaintiffs do not argue on appeal that genuine issues of material fact precluded summary disposition. Rather, they assert that they "should have been afforded an opportunity to amend their complaint if the court had found the pleadings in the complaint deficient." However, the trial court did not find deficiencies with the pleadings, but with the facts. The trial court indicated that plaintiffs had failed to provide any evidence validating the allegations in their complaint, whereas defendant had submitted substantial amounts of information in support of its position. The result being that there was no genuine issue of material fact that plaintiffs signed the mortgage documents for the subject property.

-4-

Our review of the record supports the trial court's decision. Although Heidi signed an affidavit claiming that she first became aware of the mortgage on the house in 2013, every single document and other piece of evidence associated with or relating to the loan, from the application, to the loan documents themselves, to the pictures of her and Carl's drivers licenses to show that they were personally present at the loan document signing, to plaintiffs' use of most of the loan amount to pay off their existing mortgage on the home, to their payments on the mortgage preceding their default, to their curing an earlier default and modification efforts on the loan, to their tax declarations associated with the loan, to their personal financial statements and insurance certificates related to the mortgaged property, and to concessions she made at her deposition in the bankruptcy proceeding contradicts Heidi's unsupported assertion that plaintiffs were unaware that the loan was a mortgage on their home and that their signatures were fraudulently placed on the loan documents. Given the complete lack of evidentiary support for plaintiffs' allegations in this action, they have failed to create a genuine issue of material fact regarding whether plaintiffs mortgaged their family home. See *Kaufman & Payton, PC*, 200 Mich App 250, 257; 503 NW2d 728 (1993) (stating, "[n]either a party nor that party's legal representative may contrive factual issues by relying on an affidavit when unfavorable deposition testimony shows that the assertion in the affidavit is unfounded"). As the trial court noted, it went out of its way throughout the entirety of the proceedings to give plaintiffs an opportunity to establish proof of their allegations, including suggesting that they produce signature exemplars for comparison, yet plaintiffs produced nothing in support of their claims. Thus, absent a genuine issue of material fact, the trial court was required to "render judgment without delay." MCR 2.116(I)(1).

MCR 2.116(I)(1) allows a trial court to grant summary disposition sua sponte, unless to do so would contravene a party's due process rights. *Al-Maliki*, 286 Mich App at 489. Whether a party has been afforded due process of law is a question of law that this Court reviews de novo. *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005). "The United States and Michigan Constitutions guarantee that no person may be deprived of life, liberty, or property without due process of law." *Souden v Souden*, 303 Mich App 406, 413; 844 NW2d 151 (2013), citing US. Const., Am V; US. Const., Am. XIV; Const. 1963, art. 1, § 17. "Due process is a flexible concept, the essence of which requires fundamental fairness. *Al-Maliki*, 286 Mich App at 485. "Where a court considers an issue sua sponte, due process can be satisfied by affording a party an opportunity for rehearing." *Id*. at 485-486.

Although plaintiffs assert on appeal that they were "blindsided" by the court's dismissal of their case, they do not contend that they lacked opportunity to present their case fully, nor can they. Although not required to do so by the court rule governing motions for reconsideration, MCR 2.119(F), the trial court permitted a hearing on plaintiff's motion, thus affording them the opportunity to present facts and authority sufficient to merit the trial court's reconsideration of its decision to dismiss. Under the circumstances, this rehearing satisfied the requirements of procedural due process. See *id*.

Plaintiffs also contend that summary disposition was inappropriate because it deprived them of the opportunity to conduct discovery after the bankruptcy court lifted the automatic stay. We disagree. Summary disposition may not be appropriate if the opposing party has not had a reasonable opportunity to conduct discovery. *Huntington Nat Bank v Daniel J. Aronoff Living Trust*, 305 Mich App 496, 513; 853 NW2d 481 (2014). However, summary disposition may be

proper if further discovery does not stand a fair chance of uncovering factual support for opposing summary disposition. *Village of Dimondale v Grable*, 240 Mich App 553, 566; 618 NW2d 23 (2000). In this case, the record does not clearly show that plaintiffs conducted any discovery, or responded to defendant's discovery requests, during the more than six months between filing their complaint in this case and the automatic stay occasioned by their bankruptcy petition, or that the trial court did anything to prevent plaintiffs from conducting discovery after the lifting of the stay. Further, plaintiffs have done no more than speculate about a possible way forward; they have not shown that there is a fair chance that discovery would uncover factual support for their claim that an employee of defendant's predecessor fraudulently induced them to sign the mortgage documents. *Id*. For these reasons, we conclude that the trial court did not err in summarily disposing of plaintiffs' case without providing additional time for discovery.

Finally, plaintiffs claim that the trial court erred by allowing the sheriff's mortgage sale to stand because the sale was conducted in violation of a temporary restraining order. We disagree. We review de novo a trial court's conclusions of law and equitable decisions, as well as its interpretation and application of court rules. *Sweet Air Inv, Inc v Kenney*, 275 Mich App 492, 496-497; 739 NW2d 656 (2007).

MCR 3.310(C) governs the form and scope of injunctions and states:

An order granting an injunction or restraining order

(1) must set forth the reasons for its issuance;

(2) must be specific in terms;

(3) must describe in reasonable detail, and not by reference to the complaint or other document, the acts restrained; and

(4) is binding only on the parties to the action, their officers, agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Plaintiffs requested and obtained a temporary restraining order on April 1, 2014, the day before the foreclosure sale, scheduled for April 2, 2014, at 10:00 a.m. The temporary restraining order stayed the redemption period and "enjoined and prohibited" defendant from "furthering the foreclosure." The order was silent with regard to enjoining the sheriff's department from conducting the sale. In addition, the sheriff's deputy who conducted the sale attested that he was not actually served with and had no notice of the temporary restraining order until after he had already conducted the sale. Thus, even if the deputy was "in active concert or participation" with defendant, the temporary restraining order did not bind the deputy because plaintiffs did not ensure timely service of the restraining order on the sheriff's department. MCR 3.310(C)(4). Further, "[t]he Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." *Sweet Air Inv, Inc v Kenney*, 275 Mich App 492, 497; 739 NW2d 656 (2007), quoting *United States v Garno*, 974 F Supp 628, 633 (ED Mich, 1997), citing *Detroit Trust Co v Agozzinio*, 280 Mich 402, 405-406; 273 NW2d 747 (1937), and *Calaveras Timber Co v Michigan Trust Co*, 278 Mich

445, 450; 270 NW2d 743 (1936). Plaintiffs have not alleged any fraud, irregularity, or peculiar exigency attributable to defendant.

Affirmed.

/s/ Donald S. Owens
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering