**In the Matter of the Petition for Declaratory Ruling Filed for CLAY–UNION ELECTRIC CORPORATION.**

**No. 12919.**

Supreme Court of South Dakota.

Argued April 22, 1980.

Decided Dec. 30, 1980.

Theodore J. Dolney, Vermillion, and Vincent J. Protsch, Howard, for appellant Clay-Union Electric Corp.

Merle D. Lewis, Huron, for appellee Northwestern Public Service Co.; Alan D. Dietrich, Huron, on brief.

Leo P. Flynn, Milbank, for amicus curiae S.D. Rural Electric Association.

YOUNG, Circuit Judge.

This appeal arises from an order of the circuit court that reversed a declaratory ruling of the Public Utilities Commission (PUC) awarding Clay Union Electric Corporation (CUEC) the right to provide retail electric service to Alumax Extrusions Inc. (Alumax) near Yankton, South Dakota. CUEC appeals from that order. We affirm.

Appellant CUEC is a rural electric cooperative. Appellee Northwestern Public Service Company (NWPS) is an investor-owned electric utility. Both utilities provide electric service at retail in Yankton County, South Dakota. Prior to 1973, the parties were involved in several legal disputes concerning service rights to an area immediately east of the city of Yankton, South Dakota. Pursuant to a resolution of the South Dakota Electric Mediation Board, the utilities entered into an agreement establishing designated exclusive service areas within the disputed territory. Boundary delineation between these designated exclusive areas was established by maps and by legal description. Each utility was granted the right to continue to service "existing structures and outlets" but "no new connections or hookups" could be made

within the designated service areas of the other utility.

In 1975, the South Dakota Legislature enacted SDCL ch. 49–34A, granting the PUC the authority to establish exclusive service areas for every utility throughout the state. SDCL 49–34A–4. These territorial boundaries could be established by the PUC in several ways. Under 49–34A–42 each electric utility had the exclusive right to provide electric service at retail "at each and every location where it is serving a customer as of March 21, 1975, and to each and every present and future customer in its assigned service area . . . ." The determination of the assigned service areas was set out in SDCL 49–34A–43 and SDCL 49–34A–44. Under SDCL 49–34A–43, two methods for determination of the boundaries were possible. First, boundaries of assigned areas outside of incorporated municipalities, "shall be a line equidistant between the electric lines of adjacent electric utilities as they existed on March 21, 1975" subject to specific modifications due to either natural or physical barriers, to "contracts provided for in this section," or to orders entered before July 1, 1975, by the electric mediation board. The second method provided in SDCL 49–34A–43 is as follows:

Contracts between electric utilities, which are executed on or before July 1, 1976, designating service areas and customers to be served by the electric utilities approved by the commission shall be valid and enforceable and shall be incorporated into the appropriate assigned service areas. The commission shall approve a contract if it finds that the contract will eliminate or avoid unnecessary duplication of facilities, will provide adequate electric service to all areas and customers affected and will promote the efficient and economical use and development of the electric systems of the contracting electric utilities.

Finally, under SDCL 49–34A–44, guidelines are set out which enable the PUC to assign specific service areas in those territories in which service is intertwined. CUEC and NWPS chose the second method and renegotiated their 1973 agreement in which they had established exclusive service areas. The PUC, following the guidelines set out in SDCL 49–34A–43, approved the 1975 contract.

The 1973 agreement and the 1975 contract allow CUEC to continue to service the existing structures and outlets of the Foss farmhouse in Block 1 of Foss' 2nd Addition, Yankton County, South Dakota, which is located within NWPS' designated exclusive area. CUEC continued to serve the farmhouse and later a trailer house located on this property. In October 1978, Alumax purchased Block 1 and Block 2 of Foss' 2nd Addition, the latter of which is also located within NWPS' designated service area. The trailer and farmhouse were removed and an aluminum plant was constructed on this property. NWPS claimed that because this location was within its designated exclusive service area and because the aluminum plant constituted a new structure, a new outlet, and a new connection or hookup, it was entitled to service the plant. CUEC claimed that SDCL 49–34A–42 gave it the authority to serve the entire location and not merely a customer. CUEC further claimed that it was continuing to serve an existing structure and outlet and that the Alumax plant was not a new connection or hookup.

The PUC found in favor of CUEC, primarily on the basis that the language in SDCL 49–34A–42 states, "Each electric utility shall have the exclusive right to provide electric service at retail at each and every location where it is serving a customer as of March 21, 1975, and to each and every present and future customer in its assigned service area . . . ." The PUC concluded that from the evidence presented a finding could be made that the Alumax plant site constituted the same location as the farmhouse and the trailer, and that CUEC's right to service the Alumax Extrusions facility at this location did not abrogate or violate the 1973 or 1975 agreements.

 In reviewing the actions of any agency it is our duty to decide whether the

law has been correctly applied and whether the agency's findings are clearly erroneous. *South Dakota Public Utilities Commission v. Otter Tail*, 291 N.W.2d 291 (S.D.1980); *Matter of Certain Territorial Elec. Boundaries, Etc., (Mitchell Area)*, 281 N.W.2d 65 (S.D.1979).* In reviewing the sufficiency of the evidence we do not sit as a trial de novo of the agency but limit our review to whether the findings and decision of that agency are clearly erroneous. SDCL 1–26–36(5); *Huffman v. Bd. of Ed. of Mobridge Ind. Sch. Dist., Etc.*, 265 N.W.2d 262 (S.D. 1978). The review by this Court is the same as that conducted by the circuit court without a presumption of correctness as to the lower court's findings. *South Dakota Public Utilities Commission v. Otter Tail*, supra; *Application of Mont.-Dak. Util. Co., Etc.*, 278 N.W.2d 189 (S.D.1979); *Piper v. Neighborhood Youth Corps*, 90 S.D. 443, 241 N.W.2d 868 (1976).

The PUC was presented with substantial evidence that the terms "structure," "outlet," "connection" and "hookup" had narrow and specific meanings within the field of utility services. The uncontradicted testimony of the expert witnesses overwhelmingly showed that the term "structure" related to a building or facility containing electrical utilization equipment; that "outlet" related to a point in the wiring systems; and that "connection" or "hookup" referred to the physical attachment of the wire service. The evidence also points to the fact that the electric service provided by CUEC to the farmhouse and trailer located in Block 1 of Foss' 2nd Addition, Yankton County, South Dakota, consisted of a single-phase, 240 volt electric service. Electric service that would be required by the Alumax plant is a 277–480 volt, three-phase, four-wire service. For CUEC to provide such service, it would be necessary for the utility to construct a new service line to the Foss 2nd Addition on its nearest existing similar service line. At the minimum, such service would require 3,200 feet of line to be constructed by CUEC to the Alumax

plant. NWPS, however, has an existing three-phase distribution and transmission line approximately 300 feet west of the proposed plant site. In addition, NWPS has four substations within close vicinity to the plant to provide such electric service.

Notwithstanding the above-cited evidence, the PUC concluded as a "finding of fact" that:

> Clay-Union Electric Corporation's right to serve the Alumax Extrusions facility at a pre-March 21, 1975 location does not abrogate or violate the 1973 or 1975 agreements entered into by and between Northwestern Public Service Company and Clay-Union Electric Corporation. The Commission finds that on the basis of the expert testimony presented and the express terms of the 1973 agreement above set forth, no violation thereof will occur by permitting Clay-Union Electric Corporation to provide permanent service to the Alumax Extrusions facility. . . .

Reviewing the above evidence as a whole, this Court finds that the conclusion reached by the PUC is clearly erroneous in light of the entire evidence in the record.

CUEC contends, however, that SDCL 49–34A–42 and its predecessor, SDCL 49–41–7, reflect a legislative intent to protect exclusive service rights, not merely to a customer, but to a legally described area surrounding that customer. In particular, CUEC contends that the legislative change of the word "structures" in SDCL 49–41–7 to "location" in SDCL 49–34A–42 requires a more expansive interpretation of the reserved rights. As we recently discussed in *Matter of Certain Territorial Elec. Boundaries, Etc., (Aberdeen Vicinity)*, 281 N.W.2d 72 (S.D.1979), the legislative intent in enacting SDCL ch. 49–34A was to prevent this very type of service dispute by allocating each utility an exclusive franchise within specific boundaries. SDCL 49–34A–4. Such designation of boundaries is a necessary regulatory measure to which all new territories are subject. By the terms of this

---

* We note that the "clearly erroneous" standard of review is applicable to this case inasmuch as the order in question was entered after July 1, 1978. See *South Dakota Public Utilities Commission v. Otter Tail*, supra, 291 N.W.2d at 293, n. 2.

statute the Legislature provided two specific types of protection. First, it assured that each utility would be granted all future service rights within its designated service area; and second, it protected individual service existing at the time the franchise was granted.

In *Matter of Certain Territorial Elec. Boundaries, Etc., (Aberdeen Vicinity),* supra, we discussed the dichotomy which appeared in the statutory language of SDCL ch. 49–34A.

> Obviously, the PUC cannot set boundaries under guidelines of SDCL 49–34A–44 without disrupting rights to serve customers that may have vested under SDCL 49–34A–42. It is our duty to reconcile any such apparent contradiction and to give effect, if possible, to all of the provisions under consideration, construing them together to make them harmonious and workable. *North Central Investment Co. v. Vander Vorste,* 81 S.D. 340, 135 N.W.2d 23 (1965). This requires that the exclusive rights provision of SDCL 49–34A–42, as well as the equidistant concept of SDCL 49–34A–43, must yield to a boundary determination according to the guidelines of SDCL 49–34A–44, whenever the PUC finds that the utilities' lines are intertwined. *Id.* at 76.

The protection of existing service rights in SDCL 49–34A–42 is subordinate to the legislative intent to allow the utilities, with the consent of the PUC, to agree by contract to designated service areas and customers to be served. By the terms of the 1973 and 1975 agreements, the parties contractually limited services within the designated area of the other to existing structures and outlets, and provided that there be no new connections or hookups within the designated area of the other. This agreement took away the right the utilities had under SDCL 49–34A–42 where they were allowed to serve present and future customers in the assigned service area.

The contract between the parties is controlling in this case. The contract outlines the areas and the limitation of service, and the parties are bound by these limitations. Each utility could continue to service existing structures and utilities, but no new connections or hookups. Under the terms of the parties' agreement, Alumax is not an existing structure nor outlet but is a new structure and a new outlet. After construing the terms of this contract, we conclude that the PUC's decision was clearly erroneous and that the trial court's order reversing that decision should be affirmed.

The order appealed from is affirmed.

WOLLMAN, C. J., and HENDERSON and FOSHEIM, JJ., and WUEST, Circuit Judge, concur.

YOUNG, Circuit Judge, sitting for DUNN, J., disqualified.

WUEST, Circuit Judge, sitting for MORGAN, J., disqualified.