**In the Matter of John GRIDLEY, Jr.**

**No. 14252.**

Supreme Court of South Dakota.

Argued Jan. 18, 1984.

Decided March 14, 1984.

Rehearing Denied April 23, 1984.

Douglas E. Kludt, Asst. Atty. Gen., Pierre, for appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

John N. Gridley, III, Sioux Falls, for appellee.

YOUNG, Circuit Judge.

## ACTION

Appellant, State of South Dakota (State), appeals a Circuit Court decision reversing the South Dakota Division of Insurance's (Division) revocation of Appellee John N. Gridley, Jr.'s (Gridley) insurance agent's license. We reverse.

## FACTS

Appellant insured its automobile fleet with Western Casualty and Surety Company (Western) from July 19, 1980 to July 19, 1983. Appellee, John N. Gridley, was the insurance agent on the policy.

On June 26, 1981, the State informed Gridley that it was bidding its insurance policies. As a result, Gridley agreed to extend the policy on a pro rata basis until bids could be let.

The State sent Gridley its $181,566.49 premium in July, 1981 for the period of July 19, 1981 to July 19, 1982. Gridley commingled the premium monies in his business account. While customary practice requires that an agent transmit the insurance company's share of premiums within forty-five days to the insurance company, Gridley never transmitted any money to Western. Instead, Gridley utilized approximately $110,000 to pay off some loans with the First National Bank and the remaining $70,000 was used to operate his business.

On July 20, 1981, Gridley advised the State that the policy would be cancelled and the more punitive short rate basis would be applied. However, in September 1981, Western determined that the State's policy should be cancelled on a pro rata basis and Gridley was informed of that decision. As a result, Western notified Gridley in late October or early November 1981 that the State was due a refund premium in the amount of $14,957.49 according to its audit covering July 19, 1980 to July 19, 1981. Western credited Gridley's account in that amount. However, the $14,957.49 refund premium was not sent to the State until the end of December 1981 and only after the State's demand.

The State subsequently cancelled its policy with Western on December 1, 1981. A final audit was performed on the State's policy and on February 2, 1981, Western informed Gridley that a refund of $100,-090.29 was owed to the State utilizing the pro rata basis. Western credited Gridley's account in that amount.

On February 12, 1982, the State received a check in the amount of $80,990.40 from Gridley. That amount represented the estimated return premium figured on the more punitive short rate basis. When the State attempted to cash the check, it was returned nonsufficient funds (NSF) and it was not honored by the bank until March 1, 1982, when Gridley secured a loan.

The State demanded the remaining $19,-099.89 from Gridley; however, Gridley never paid the amount. Western finally paid the State the remaining amount on March 31, 1982. Western subsequently suspended Gridley as an agent.

On August 17, 1982, the Division of Insurance held a hearing concerning Gridley's conduct and the hearing officer determined that his conduct justified license revocation pursuant to SDCL 58–30–106. The officer found that SDCL 58–30–88 requires that all premiums received by an insurance agent are trust funds received in a fiduciary capacity. As a result, the agent must account for and pay the insured or insurer when it is entitled to receive funds. Based on the facts, Gridley violated his fiduciary responsibility in four ways: failure to return the full amount of premium refund due the State upon cancellation of its policy ($100,090.29); unjustifiably withholding a refund due the State in the amount of $14,957.49 for a period of two months; utilizing the State's $181,566.49 premium to pay off a bank note and to operate his business; and inability to cover his $80,-990.40 NSF check for a substantial period

of time. The Director of the Division of Insurance subsequently affirmed the hearing examiner's decision on December 27, 1982, and revoked Gridley's license.

Gridley appealed the license revocation to circuit court and requested an evidentiary hearing. The court granted Gridley's request. On June 2, 1983, the court reversed the Division of Insurance's decision. First, the court held that since it is a customary practice within the insurance industry to commingle funds, the hearing examiner was clearly erroneous in concluding that Gridley violated his fiduciary responsibility when he used the State's premium to pay off a bank note and operate his business. Second, the court held that there was a lack of evidence to show Gridley's two-month delay in forwarding a refund was in violation of the insurance industry's practice and constituted a violation of a fiduciary responsibility. Third, because there is a dispute concerning a method upon which the State's refund was calculated and the State received its refund within two months, Gridley's failure to forward the refund did not justify license revocation.

## SCOPE OF REVIEW

■ Appeals from the Division of Insurance are governed by SDCL Ch. 1–26. We have jurisdiction to review the circuit court's judgment pursuant to SDCL 1–26–37. We review a circuit court's ruling on administrative actions using the same standard of review as employed by the circuit court. *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292 (S.D.1982).[1] Further, "as we review the administrative record, we are not bound by a presumption that the Circuit Court was correct." *Matter of Ackerson*, 335 N.W.2d 342, 345 (S.D. 1983); *Matter of Clay-Union Elec. Corp.*, 300 N.W.2d 58 (S.D.1980); *Matter of South Lincoln Rural Water System*, 295 N.W.2d 743 (S.D.1980).

■ As a result, it is our duty to review the Division's actions and determine whether their findings are clearly erroneous in light of the entire evidence in the

record and whether the law was applied correctly. *Matter of Clay-Union Elec. Corp.*, 300 N.W.2d at 60. Further we must give great weight to the Division's findings and inferences drawn on questions of fact. SDCL 1–26–36. While this Court will not substitute its judgment for the administrative decision, we will reverse when the decision is against the clear weight of evidence or leaves us with a firm and definite conviction that a mistake has been made. *Matter of Ackerson*, supra; *Dakota Harvestore v. South Dakota Dept. of Revenue*, 331 N.W.2d 828 (S.D.1983); *Deuter v. South Dakota Highway Patrol*, 330 N.W.2d 533 (S.D.1983). We are not convinced that the Division's decision is against the clear weight of the evidence or the Division committed a mistake.

■ Before considering the merits of this action, we must ascertain whether the circuit court's April 8, 1983, evidentiary hearing was proper. SDCL 1–26–34 allows additional evidence to be presented in circuit court if it is shown to the court's satisfaction that the evidence is material and good reasons for failure to present the evidence before the agency exists.

In the instant case, appellee cited eleven areas where additional evidence must be given at an evidentiary hearing:

1. The insurance industry's standard in handling premiums;
2. Revocation of Gridley's license prior to the time allowed by statute (SDCL 1–26–28);
3. The hearing examiner's request that only the State prepare Findings and Conclusions;
4. Unauthorized contact between the State and the hearing examiner (SDCL 1–26–26);
5. Lack of opportunity to respond to the proposed administrative decision (SDCL 1–26–24);
6. The Director of the Division of Insurance commingled the investiga-

---

**1.** The Circuit Court review was prior to the 1983 Amendment to SDCL 1–26–36; therefore, we do

not address or apply the 1983 Amendment at this time.

tion, prosecution and adjudication functions (SDCL 1–26–26);

7. The State's resistance to continuances;

8. The State's refusal to pay for a court reporter;

9. The State's use of improper language;

10. The State's release of the Division's order revoking Gridley's license to the news media; and

11. The State's notification of the Division's order revoking Gridley's license to other institutions and persons.

The eleven reasons can be grouped and discussed in three areas. Allegations 2, 3, 5, 8, 9, 10 and 11 represent questions of law. As a result, additional evidence would be immaterial. It is noteworthy that the April 8, 1983, evidentiary hearing never dealt with any of the allegations in the first grouping.

Allegations 4, 6, and 7 are simply assertions with no basis and would be more appropriate as an objection under SDCL 1–26–35. Once again even with the opportunity to present evidence in the hearing, appellee presented no evidence.

Finally, Allegation 1 represents the only category where evidence would be material. However, the insurance industry's standard was the basis of testimony in the Division's hearing on August 17, 1982. As a result, the evidence presented at the circuit court's hearing was cumulative.

Most importantly, appellee failed to show good reason for his failure to present this evidence before the Division. Because the administrative hearing examiner needs all the evidence to properly make his decision, appellee must present all of his evidence before the examiner unless there is good reason. Because Gridley did not demonstrate good reason, the circuit court's evidentiary hearing was improper. As a result, the transcript of the April 8, 1983, hearing is not a proper part of the record for our review.

## DECISION

■ SDCL 58–30–106(3) allows the director of the Division of Insurance to revoke an agent's license for violation of or noncompliance with an applicable provision of the chapter. The Director revoked Gridley's license because he violated SDCL 58–30–38 which states "all premiums or return premiums received by an agent shall be trust funds received by the licensee in a fiduciary capacity, and the agent or soliciting agent shall account for and pay the same to the insured, insurer or agent entitled thereto."

SDCL 58–30–88 fails to explicitly designate standards which an agent must follow when handling return premiums. However, the record reveals the customary standards of the insurance industry. First, an agent must transfer the insurance company's share of the premium to the insurance company within 45 days of its receipt. Second, an agent must return a premium to a customer immediately after the completion of a final audit. Third, an agent must forward a premium refund to a customer even while the agent and the insurance company continue to dispute the amount. Fourth, an agent has no authority to determine the rate of cancellation. Finally, the agent must forward a refund premium check to a customer with sufficient funds in his account to cover the amount.

The facts of the instant case demonstrate a violation of SDCL 58–30–88 and the customary practices within the insurance industry. After receiving the State's $181,566.49 premium in July 1981 Gridley failed to transfer Western's share of the premium at any time. Customary practice mandates that Gridley transfer Western's share within 45 days of its receipt. Because Western never received its share, Gridley violated SDCL 58–30–88 in his failure to account for and pay Western its funds.

Additionally, when Gridley advised the State that the cancellation rate would be calculated on the short rate basis instead of a pro rata basis, he violated the insurance industry's standard that an agent has no authority to determine the rate of cancella-

tion. Gridley further failed to immediately refund the State $14,957.49 after Western's October 1981 final audit and after Western credited his account. Instead, the State received its money approximately two months later after its numerous demands. This conduct clearly violates SDCL 58–30–88 because Gridley failed to account for and pay the State its refund premium.

Finally, Gridley's failure to remit the State's $100,090.29 refund violates SDCL 58–30–88 and the insurance industry's practices. When Western completed its final audit on the State's account, Gridley was under a duty to send the State its full refund even though he disputed the rate of cancellation.

Gridley has never forwarded to the State the full $100,090.29 refund even though Western Casualty sent him this money for the refund. Instead Gridley sent the State an NSF check for $80,990.40 on February 12, 1982. The State actually received this $80,990.40 on March 1, 1982, after Gridley had procured a loan to make the check good.

Further, Gridley has never paid the State the remaining $19,099.89 refund premium. Western finally paid the State its balance on March 31, 1982.

Overall, Gridley's conduct violates SDCL 58–30–88 and justifies his license revocation. Thus, it is the opinion of this Court that the Division of Insurance's decision to revoke Gridley's license was not clearly erroneous in light of the entire evidence in the record. Further, the Division utilized the correct law in rendering its decision to revoke his license.

Because all remaining issues raised lack merit, we reverse the judgment of the circuit court and reinstate the Division of Insurance's decision to revoke Gridley's license.

FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.

HENDERSON, J., concurs in result.

YOUNG, Circuit Judge, sitting for DUNN, J., disqualified.

HENDERSON, Justice (concurring in result).

Although I agree with the results herein, particularly because (1) this insurance agent issued an $80,990.40 NSF check to the state and then failed to make it good for a period of approximately one month, and (2) the insurance agent failed to forward an insurance premium to his company within the industry's custom and usage practice, I do not agree completely with certain language of the opinion. Therefore, I feel compelled to assert my views.

It is simply a fact of business life in South Dakota that specific identification of individual dollars and separate accounts for customers and insurance companies are not kept by insurance agencies. Trust accounts, as one perceives established by lawyers and realtors, are not the practice nor a requirement of the insurance industry. Our legislature and the State Department of Insurance has failed to pass specific laws and implement standards of conduct for insurance agents in this regard. Simply put, there is a tremendous void with respect to acceptable conduct involving money and, in a sense, this insurance agent is engulfed in this void.

It further appears, as a fact of business life, that insurance agents advance their own customers' premiums and often borrow money from banks to accomplish this purpose. Often, agents use money received for a premium payment from insurance company "A" to apply on the account of insurance company "B". Insurance agents live in a fast-moving business world. There are multitudinous amounts of insurance sales, not unlike merchants in other endeavors of the commercial world. This all begets a shuffling and commingling of funds. In fact, commingling is the rule, not the exception. With this background, i.e., the void of law and regulation in this state, and the custom and usage of the insurance industry, Gridley is ensnarled.

SDCL 58–30–88 is a very general statute and it is upon this statute that the Hearings Officer predicated his decision that

Gridley had violated his fiduciary responsibility. Under the insurance practices, I cannot fault Gridley for a commingling of funds when it is commonly done in the industry; I cannot fault him for paying off a note and operating his business on a premium which came in to his business account; I must fault him for writing a check of such magnitude and then not immediately taking care of it when he realized it was not honored; and I must fault him for not reasonably forwarding a premium to the insurance company he represented. However, I do not believe that he should bear the sins of the insurance industry and the State of South Dakota which has neglected to manifest, in writing, standards which an agent must follow when he receives premiums.

Lastly, although I have concurred in the results herein, I wish to express that a former assistant attorney general was the Hearings Officer herein and was paid by the State of South Dakota. This action was brought by the State of South Dakota and heard in the state capitol. It involved a civil claim of the State of South Dakota against Gridley. Those associated with prosecuting and hearing the case are well-intentioned men, but young men. Considering all of the circumstances, to include litigation pending between Gridley and Western Casualty and Surety Company, and further considering that the State of South Dakota decided to cancel a State fleet automobile liability policy in the middle of a policy year and re-bid the insurance which triggered an appeal to this Court,* I would hope that the milk of human kindness would someday flow towards Gridley who is in the penumbra of his earthly life. He has been a licensed insurance agent in South Dakota since 1946. The original notice to him requested either a revocation or suspension of his license. The Hearings Officer, acting at the request of the State, upon the complaint of the State, and being paid by the State, opted for the most extreme measure, a revocation. It was a heavy punishment.

* *Gridley v. Engelhart,* 322 N.W.2d 3 (S.D.1982).