**In the Matter of the Grievance of Trooper Marvin STAVIG, Appellee,**

v.

**SOUTH DAKOTA HIGHWAY PATROL, Appellant.**

**No. 14695.**

Supreme Court of South Dakota.

Argued April 9, 1985.

Decided July 3, 1985.

Max A. Gors of Gors, Braun & Carlon, Pierre, for grievant and appellee.

Mark Barnett, Asst. Atty. Gen., Pierre, for respondent and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

FOSHEIM, Chief Justice.

Trooper Marvin Stavig (Stavig) was informed by the director of the South Dakota Highway Patrol (Highway Patrol) on August 31, 1983, that he was being involuntarily transferred from his duty station at Mitchell to Kadoka, South Dakota and that he was being suspended without pay for three duty days. Stavig was informed that both measures were being taken for disciplinary reasons.

An appeal was taken from this disciplinary action and a hearing was held before the South Dakota Law Enforcement Civil Service Commission.[1] In its finding of fact, conclusions of law and order the Commission concluded that Stavig had been insubordinate and denied his grievance. Stavig then appealed to the circuit court. The court reversed the decision of the Commission and entered finding of fact, conclusions of law, and a judgment for Stavig. This appeal is from that judgment.

Stavig was employed with the Highway Patrol in August of 1972. He had been stationed in Mitchell since his transfer from Presho in 1978. The evidence indicates that in many respects Stavig has been an effective trooper in the Highway Patrol. From time to time he has shown improvement in his weak areas. However, staying in compliance with Highway Patrol requirements has been difficult for Stavig. It has been a constant struggle involving counseling, reprimands, and patience on the part of his superiors. His most serious problems relate to personal grooming, maintenance of property and equipment, and excessive coffee breaks.

Prior to 1983, Sergeant Ibis, one of Stavig's supervisors, talked with Stavig about his apparent lack of personal hygiene. No improvement was observed.

In early 1983, Sergeant Sammons became the new supervisor of the Mitchell squad. On numerous occasions Stavig's personal appearance required Sergeant Sammons to take action. He spoke with Stavig at least twice about getting a haircut. On at least two or three other occasions, he reminded Stavig that his shoes needed to be shined. Sergeant Sammons even purchased and made a shoe shine kit available to Stavig. However, rather than shine his shoes, Stavig began wearing overshoes. Sergeant Sammons also talked to Stavig about his uniform jacket which was soiled and needed repair. These jackets are furnished at no expense to the trooper. It was the responsibility of each trooper, however, to keep his uniform in good appearance. Nevertheless, Stavig made no effort to replace or repair the jacket. It was necessary for Sergeant Sammons to do it for him.

When Sergeant John Berheim replaced Sergeant Sammons in the Mitchell area Stavig persisted in letting his hair appear unwashed and grow too long. He said he did not like to keep his hair trimmed because it associated him with law enforcement while enjoying off duty activities. His uniform often needed cleaning and he made a practice of wearing the same shirt for a number of days without washing until white stains appeared at the armpits. Because of body odor, it was unpleasant for his colleagues to work with him.

Additionally, Stavig would sometimes extend his coffee breaks for up to an hour

---

1. We take this opportunity to express our extreme displeasure in being asked to review an evidentiary record that consists solely of eight and one-half hours of unindexed tape recordings. In reviewing these cold unfamiliar records, we simply must have some assistance in the form of a type-written indexed transcript that can adequately be referred to in the briefs. *See* SDCL 15–26A–52, 15–26A–60(5) and 15–26A–64. Admittedly, the rules of administrative procedure have no such express requirement. SDCL 1–26–32.4 and SDCL 1–26–33.2.

and continue them from one restaurant to another.

Stavig did not meet the standards of inspection with reference to the maintenance of his equipment. The interior and exterior of his car was unclean. The seat was broken down and he failed to install a new seat cushion. His shotgun and sidearm needed cleaning.

Following a meeting in April, concerning these conditions, Stavig assured his supervisors that he would improve. As a result of this meeting a seven point memo was drawn up which clearly expressed what was expected. Upon receipt of that memo, Stavig made a substantial, but temporary improvement. The improvements peaked and he again went on a downward slide until August 1983.

Sergeant Sammons then ordered Stavig to get a hair cut to Highway Patrol standards. Six days later, Stavig had not complied and he was ordered again to get his hair cut. He then complied. Stavig admits that within the six days he had adequate time and opportunity to get his hair cut, but that he merely chose not to comply. He admitted that when he was compelled to keep up with standards, it helped him in his job and that it had a positive impact on how the public perceived him as Highway Patrol Trooper.

The scope of review of the circuit court is determined by SDCL 1–26–36:

> The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;

> (5) Clearly erroneous in light of the entire evidence in the record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
> A court shall enter its own findings of fact and conclusions of law or may affirm the findings and conclusions entered by the agency as part of its judgment. The circuit court may award costs in the amount and manner specified in chapter 15–17.

This Court's review of appeals from administrative decisions is prescribed by SDCL 1–26–37, as amended by 1983 S.D. Sess.Laws ch. 6 § 1:

> An aggrieved party or the agency may obtain a review of any final judgment of the circuit court under this chapter by appeal to the Supreme Court. The appeal shall be taken as in other civil cases. The Supreme Court shall give the same deference to the findings of fact, conclusions of law and final judgment of the circuit court as it does to other appeals from the circuit court. Such appeal may not be considered de novo.

"Under the new law we must affirm unless we determine the circuit court findings to have been clearly erroneous." *State Division of Human Rights v. Miller,* 349 N.W.2d 42, 46 (S.D.1984); *See also In re State Water Management Board,* 351 N.W.2d 119 (S.D.1984). In the final analysis, "If the agency findings are not clearly erroneous then the circuit court was clearly erroneous in so concluding." *Miller* at 46, n. 2.

The first issue urged is whether the Commission and the circuit court had jurisdiction to review the administrative reassignment which was implemented together with the three days suspension. Stavig contends the Commission and circuit court have jurisdiction to review both the suspension and the transfer to Kadoka. It is the position of the Highway Patrol that the transfer was purely a managerial administrative decision which is not subject to agency or court review.

Stavig's superiors were authorized to take certain actions for disciplinary reasons. "Disciplinary action may be taken for just cause ... and may include the following: (1) Suspension without pay; (2) Involuntary termination; (3) Demotion; or, (4) Reduction in salary." ARSD 55:02:21:02; *See* SDCL 3–7–18.[2] Transfers do not appear among the disciplinary actions that may be taken for just cause. Nor does the rule preclude the Highway Patrol, according to its own operations manual, from transferring Stavig for nondisciplinary reasons. The testimony reveals Stavig's transfer was a managerial decision made to help him start over with a "clean slate" and to reach his new goals. Although Stavig's transfer may have been called a disciplinary measure by his supervisor, it was in fact and law no more than a management call designed to serve the best interests of both the Highway Patrol and Stavig. The merit for that flexibility is obvious. The Highway Patrol could not efficiently and promptly function if every transfer could get bogged down as a grievance before the Commission.

■ The Commission's authority to hear appeals from transfers has also been removed. ARSD 55:02:08:01 (repealed). That authority is now limited to hearing appeals from a suspension, involuntary termination, demotion, or reduction in salary. ARSD 55:02:21:02 and 55:02:22:05. In *Deuter v. South Dakota Highway Patrol*, 330 N.W.2d 533, 536 (S.D.1983), this court stated, relying on *Drovdal v. Department of Public Safety*, 255 N.W.2d 437 (S.D.1977):

> [T]he [Law Enforcement Civil Service] commission does not have authority to modify the *type* of disciplinary action taken by the Highway Patrol. Rather, the function of the Commission is to conduct a hearing comporting with due process requirements to determine if good cause exists for the disciplinary action of the Highway Patrol.

*See also Drovdal v. State Department of Public Safety*, 255 N.W.2d 437 (S.D.1977). Even though an involuntary transfer may also appear to carry sanction overtones, that does not subject it to review by the Commission.

■ Adhering to the *Deuter* decision, *supra*, the Commission determined that it could not consider the propriety of Stavigs transfer. Once the Commission determined there was cause for the discipline, Stavig's grievance was in all things denied. We agree with the conclusion of the Commission. The Commission did not commit an error of law in concluding that it could not review the type of discipline or the managerial decision to transfer Stavig.

■ The circuit court chose also to disagree with the Commission and found no just cause existed for Stavig's transfer and suspension without pay. The facts presented to the Commission warranted a finding that cause existed to discipline Stavig, and the Commission's finding on this issue was not clearly erroneous. The trial court was clearly erroneous in finding otherwise. *See* SDCL 1–26–37. If we were to find error with the discipline, it would be what appears to be an excess of restraint and indulgence on the part of the Highway Patrol.

We accordingly reverse the judgment of the circuit court. The decision of the South Dakota Law Enforcement Civil Service Commission is affirmed.

WOLLMAN and MORGAN, JJ., concur.

HENDERSON, J., and DUNN, Retired Justice, dissent.

DUNN, Retired Justice, sitting for WUEST, Circuit Court Judge, Acting as a Supreme Court Justice, disqualified.

---

**2.** SDCL 3–7–18 grants the Commission rule making authority:

> The commission shall make rules to carry out the purposes of this chapter, and for examinations, appointments, *transfers, discipline,* retirement, standards of conduct, adverse action, political activity in employment, hours of work, equal opportunity, complaints, grievances and appeals to the commission ...[.] (Emphasis added).

DUNN, Retired Justice (dissenting).

A. At the outset, this appeal should be dismissed for failure to provide a proper transcript of the Commission hearing. Appellant's reliance on SDCL 1–26–32.4 is misplaced. This court has the power to make such requirements as it deems necessary for a transcript on appeal and that is set out in the appendix to SDCL 15–26A (Form 3 Appeal Transcripts), which reads:

1. Appeal transcripts shall consist of volumes of 250 pages or less, prepared on 8½″ × 11″ white opaque paper with 25 prenumbered, double-spaced lines per page.

2. Each page shall have ruled margins with ¾″ top and bottom margins, a 1½″ left margin, and a ½″ right margin.

3. The transcript shall be typed using pica type with 10 characters per inch; questions shall start with a "Q" flush at the left margin, with two spaces between "Q" and the text of the question; answers shall start with an "A" flush at the left margin with two spaces between "A" and the beginning of the text of the answer; colloquy, such as the "THE COURT," "MRS. JONES," etc., shall start three spaces from the left margin.

4. The pages shall be consecutively numbered throughout the entire transcript (not according to volume) located at the bottom center of each page.

5. Each volume shall be securely bound with a protective cover upon which or through which the following shall appear: (a) a 1½″ blank space at the top of the page; (b) the trial court name, location and case number; (c) the case name; (d) the type of proceeding; (e) the date of the proceeding reported in that volume; (f) the name of the judge before whom the proceedings occurred; (g) appearances; (h) the volume number and the pages included in the volume.

6. An index of witnesses, motions, and exhibits shall follow the cover page of the first volume of each transcript; each major event of the proceeding shall be listed separately and identified by the transcript page number at which it begins.

The filing of an eight and one-half hour tape in lieu of a transcript without any index of witnesses, motions, or exhibits, is in violation of the letter and spirit of this rule and, further, is a most severe imposition on a court already beleaguered by appeals. This is particularly true where the issue presented is whether there is sufficient evidence in the record to support the Commission's findings.

B. The Highway Patrol violated its own rules when it used a "transfer to Kadoka" as punishment. ARSD 55:02; 21:02. Aware of this, the Commission went through all kinds of "verbal gymnastics" in its brief and in oral argument to make this transfer something besides a disciplinary action. The Highway Patrol, however, is bound by its own language in the disciplinary letter of August 31, 1983, which made it crystal clear in two separate paragraphs that the transfer was part of the punishment. It cannot claim otherwise on appeal.

C. Finally, from the facts and exhibits in the record that are clear and unrefuted, there was not just cause for disciplining this trooper who had thirteen years on the force. The tenor of the majority opinion would lead one to believe that Trooper Stavig had not changed his shirt or taken a bath in thirteen years. If even partially true, this is a most serious indictment of the administration of the Highway Patrol. When you sort out the rumors, the backbiting, and the brown-nosing described in the majority opinion, however, we are left with certain real and unrefuted facts:

(a) Stavig was cited for a bad inspection in April, 1983, relative to his personal grooming and hygiene; and his maintenance of patrol property and equipment.

(b) On August 11, Stavig was given a favorable evaluation on the items he had been cited for in April (Exhibit # 3). At the time of this evaluation, Sgt. Sammons told Stavig that he needed a haircut. When Stavig had not obtained a haircut by August 16,

he was ordered by Sgt. Sammons to have it cut and he immediately complied. In a discussion with Sgt. Sammons, Stavig maintained that his hair was in compliance with Highway Patrol regulations. Sgt. Sammons replied: "It may be in compliance with Highway Patrol regulations but it is not in compliance with *mine*."

This disciplinary action followed on August 31, 1983.

These are the unrefuted facts that have destroyed Trooper Stavig's usefulness on the force after thirteen years; for one dare not question the actions of the Sgt. Sammons' of this world in a grievance procedure and *lose*. With this court putting its stamp of approval upon a transfer, as punishment, Stavig will barely have time to light between stations until he is harrassed out of the force.

HENDERSON, Justice (dissenting).

I respectfully dissent. The judgment of the circuit court should be affirmed.

A circuit court is empowered to reverse the decision of an administrative agency if the administrative agency's decision is based upon an error of law. SDCL 1–26–36(4). The types of discipline which may be imposed by Director Baum are established by rule in ARSD 55:02:21:02.

*Forms of disciplinary action.* Disciplinary action may be taken for just cause as outlined in § 55:02:21:07 [sic][1] and may include the following:

(1) Suspension without pay;

(2) Involuntary termination;

(3) Demotion; or

(4) Reduction in salary.

It is obvious that transfers are not included in the list. There can be no doubt that the Division of Highway Patrol is bound by the rules of the Law Enforcement Civil Service Commission. SDCL 3–7–5 and SDCL 3–7–18. Furthermore, there can be no doubt that Trooper Stavig was disciplined by transfer to Kadoka, South Dakota. Witness a letter of the Highway Patrol marked Grievant's Exhibit # 6, dated August 31, 1983. Two basic statements are made in the letter concerning discipline: (1)*"The above mentioned transfer and suspension from duties are disciplinary actions* and are being taken in accordance with Law Enforcement Civil Service Rules 55:02:21:02 and 55:02:21:06"; and (2) *"Since this transfer is a disciplinary move,* you will not be entitled to receive transfer pay." (Emphasis supplied.)[2]

A key South Dakota decision has been overlooked. It simply stands for the proposition that an administrative agency must obey its own rules. *In re Fair Hearing for Fort Thompson Senior Citizens, Inc., Crow Creek Sioux Tribe*, 344 N.W.2d 698, 699 (S.D.1984). *See also, United States v. Nixon*, 418 U.S. 683, 695–96, 94 S.Ct. 3090, 3101, 41 L.Ed.2d 1039, 1057 (1974).

The circuit court judge made a determination that the Division of Highway Patrol, by and through Director Baum, made an error of law. This was exemplified by Finding of Fact 9, which provided: "The Director exceeded his authority when he disciplined Trooper Marvin Stavig by transferring him to Kadoka" and by Conclusion of Law H, which provided: "The Law Enforcement Civil Service Commission's conclusion that Trooper Marvin Stavig could be transferred for disciplinary reasons is an error of law." Thus, the circuit judge was, in the vernacular of the young people of our nation, "right on." In the vernacular of those born of another generation, he hit the nail on the head.

Obviously, the circuit court's ultimate determination that the Law Enforcement Civil Service Commission's conclusion that

---

1. The ARSD manual is incorrect; this should be ARSD 55:02:21:06. The Legislative Research Council has been notified of this mistake by this author and was advised that a correction would be made immediately by computer. Later, when the rules are retyped, this correction will surface.

2. The majority opinion now calls this a "management call," a term of literary creation and a stranger to these proceedings.

Trooper Marvin Stavig could be transferred to Kadoka, South Dakota, for disciplinary reasons was an error of law—is not clearly erroneous. SDCL 1–26–37; *State, Div. of Human Rights v. Miller,* 349 N.W.2d 42, 46 n. 2 (S.D.1984).